OF THE

## STATE OF WASHINGTON,

AT THE

# JANUARY SESSION, 1893.

[No. 622. Decided March 1, 1893.]

ZEPHANIAH J. HATCH *et ux.*, *Appellants*, v. TACOMA, OLYMPIA & GRAY'S HARBOR RAILROAD COMPANY, *Respondent.*

DAMAGES — RAILROAD IN STREET — INJURIES TO ABUTTING PROPERTY — PLEADING — CITY AS PARTY DEFENDANT.

In an action for damages to abutting property from the construction and operation of a railroad in a street, an answer by the railroad company which is, in effect, a plea of license from the city to construct and operate their railroad in the street cannot be stricken out on the ground of irrelevancy or immateriality.

In an action against a railroad company for damages caused by raising the grade of a street five feet, thereby shutting off access thereto from abutting property, an answer alleging that the right to enter upon the street and change the grade thereof was authorized by an ordinance of the city is demurrable for want of sufficient facts, when the charter of the city, while authorizing the grant of franchises to lay railway tracks, provides that "no railway track can thus be laid down until the injury to property abutting upon the street . . . has been ascertained and compensated." (HOYT, J., dissents.)

Where a city enacts an ordinance, under its charter, granting the privilege to a railroad company to tunnel a street, build a bridge over it, and lay a railroad track therein, the city is not liable therefor, and the dismissal of the action against the railroad company for plaintiff's failure to make the city a party defendant is error.

*Appeal from Superior Court, Thurston County.*

*Allen, Ayer & Franklin,* for appellants.

*Mitchell, Ashton & Chapman,* for respondent.

The opinion of the court was delivered by

ANDERS, J.—The appellants sued the respondent to recover damages alleged to have been occasioned to their property by the building and operating of a railroad along Seventh street, in the city of Olympia. The complaint alleges:

"3. That on said date plaintiffs became the owners in fee, and obtained possession, and are now such owners, and have possession, and at all times hereinafter mentioned were such owners, and had possession, of that certain tract of land situate at the northeast corner of Franklin street and Seventh street, in the city of Olympia, county of Thurston and State of Washington, known, designated, and numbered on the original plat of the town (now said city) of Olympia as lots numbered, respectively, eight (8) and seven (7), in block numbered thirty-six (36), which plat is, and for many years has been, on file in the auditor's office of said county; said lots being the southwest quarter of said block.

"4. That each of said lots fronts, and is sixty (60) feet wide, on said Seventh street, and extends northward, at right angles with said street, one hundred and twenty (120) feet; the west line of said lot numbered eight (8) being on Franklin street aforesaid.

"5. That plaintiffs are the owners in fee of so much of the land on which Seventh street aforesaid is located as lies on the front of, and adjacent to, said lots, and extends to the middle line of said street, and they are the owners in fee of so much of the land on which said Franklin street is located as lies on the west of, and adjacent to, lot numbered eight (8), and extends to the middle line of said Franklin street. Each of said streets is sixty (60) feet wide.

"6. Plaintiffs say that heretofore, to wit, on the ——

day of May, 1891, and on divers and sundry days thereafter, the defendant, the Tacoma, Olympia & Gray's Harbor Railroad Company, aforesaid, its officers, agents, servants and employés, without the consent of these plaintiffs, or of either of them, and wrongfully and unlawfully, entered upon the land of plaintiffs on Seventh street, described in the fifth paragraph of this complaint, and without the consent of plaintiffs, or either of them, and wrongfully and unlawfully, did dig up and carry away the soil thereof, and did cut a deep tunnel along and across said land, to the full extent of the width and length of said Seventh street, in front of said lots, and greatly to plaintiffs' damage.

"7. That plaintiffs' said land, described in paragraphs 3 and 4 herein, is improved property, and has thereon a valuable dwelling house, in which plaintiffs reside, and have for several years resided, and other valuable buildings, fruit trees, and other improvements.

"8. That the said defendant, its officers, agents, servants and employés, have constructed a railway along said tunnel, and have covered said tunnel with timbers and plank for the purpose of making a roadway over said tunnel and along said Seventh street, for public travel and passage, and have wrongfully and unlawfully changed and raised the grade of said street five (5) feet above the grade that had been established theretofore on said street by the city of Olympia, and that existed at the time said tunnel was cut and made as aforesaid.

"9. That said defendant, its officers, agents, servants and employés, have wrongfully and unlawfully changed and raised the grade of Franklin street, making the approach on said street to said covered way five (5) feet at the point said street intersects with said covered way, and have wrongfully and unlawfully extended said altered grade along said Franklin street, in front of said plaintiffs' said land, buildings and improvements.

"10. That said defendant, its officers, agents, servants and employés, by doing the acts and things alleged in paragraphs 8 and 9 herein, have put and left plaintiffs' aforesaid lots, buildings and improvements at a depth of five (5) feet below the top of said covered way on Seventh

street, and at the intersection of Seventh and Franklin streets, and along Franklin street, have destroyed ingress and egress to and from said property on Seventh street, and for one-half the length thereof on Franklin street, and have thereby greatly impaired and lessened the value of said lots, buildings and improvements.

"11. That said defendant is actively engaged, through its officers, agents, employés and servants, in operating its railroad, and in running passenger and freight trains, drawn by steam engines, along and through said tunnel daily, and that in so doing the smoke and sparks from said engines are thrown off in said tunnel in great quantities, and the rumble and noise produced by said trains are very great, and that plaintiffs' residence and buildings aforesaid are daily endangered and rendered unsafe and uncomfortable thereby, and the value thereof materially and greatly impaired and lessened.

"12. That said defendant, its officers, agents, servants and employés, by reason of the acts and things alleged herein, have damaged plaintiffs in the sum of five thousand ($5,000) dollars."

The respondent filed an answer admitting the construction and operating of the railroad as set forth in the complaint, but denying any knowledge or information sufficient to form a belief as to the ownership of the property described in the complaint; denying that plaintiffs are the owners of the fee to the middle line of the streets adjoining said premises; that defendant raised the grade of said streets to any extent whatever, or that it destroyed ingress or egress to and from said property on said streets, or that it thereby, or at all, has lessened or impaired the value of said lots, buildings or improvements, or either of them; that, in running its trains along and through said tunnel, the smoke and sparks from said engines are thrown off from said tunnel, or that the rumble and noise produced by said trains are very great, or great at all, or that plaintiffs' residence or buildings are injured or rendered unsafe or uncomfortable thereby, or that any of the acts com-

plained of were wrongfully or unlawfully done, or that plaintiffs have been damaged by any acts of defendant in any sum whatever.    And, as a further answer, defendant alleged:

"1. That at all the times herein mentioned it was a railroad corporation, duly incorporated under and by virtue of the laws of the State of Washington, and that the uses and purposes of said corporation for which it was so incorporated, and in which it is and at all times in said complaint mentioned was engaged, constitute and are a public use.

"2. That Seventh and Franklin streets of the city of Olympia are, and at all the times in said complaint mentioned were, and for upwards of twenty years immediately preceding any of the times mentioned in said complaint had been, public streets and highways of said city, and at a time many years prior to the plaintiffs, or either of them, acquiring any right or interest in and to the lots, or either of them mentioned in said complaint, had been designated and laid down upon the original plat of said city, and donated and granted to the public forever upon said plat, designated and laid off as such, and which said plat had theretofore, to wit, at a time more than twenty years prior to any of the times mentioned in said complaint, been recorded in the office of the auditor of said Thurston county, in which said city of Olympia is and was situated.

"3. That at all the times mentioned in said complaint and herein, said city of Olympia was duly incorporated as a municipal corporation under and by virtue of the laws of the then Territory of Washington.

"4. That on the 10th day of June, 1890, pursuant to the powers and authority by law invested in it, and under and by virtue of the express power and authority conferred by an act of the legislature of the Territory of Washington, passed and approved on the 28th day of November, 1883, entitled 'An act to incorporate the city of Olympia,' the mayor and city council of said city of Olympia did, by an ordinance, No. 399, of said city, entitled 'An ordinance granting a right-of-way to the Tacoma, Olympia & Gray's Harbor Railroad Company over certain streets and alleys,

and authority to construct a railroad and lay out depot grounds within the city of Olympia,' authorize and grant the defendant the right and privilege of constructing, equipping, maintaining and operating its line of railway over, along, through, across and under certain streets and alleys of the city of Olympia, and, among others, Seventh and Franklin streets aforesaid, which said grant so conferred was accepted by the company.

"5. That under and by virtue of said ordinance so passed, this defendant, through its proper officers and agents, did construct its line of railroad along and under Seventh street aforesaid at or about the time mentioned in said complaint, and has since the construction thereof and pursuant to the powers in said ordinance conferred, operated, and still continues to operate and maintain, its line of railroad, which constitute the acts and things mentioned and set forth in plaintiffs' complaint, and not otherwise, and that all of said acts and doings were had and done by and with the express permission of mayor and city council of said city of Olympia, as hereinbefore set forth, and not otherwise, and that said city had and has full power and authority of law to so ordain and grant permission to this defendant so to do."

The plaintiffs moved the court to strike out all of the affirmative matter set up in the answer, for the alleged reason that the same is immaterial and irrelevant. The motion was denied, and plaintiffs excepted. Plaintiffs then demurred to the same on the ground that it did not constitute a defense to the action. The court overruled the demurrer, and plaintiffs saved an exception. The defendant thereupon moved that the city of Olympia be made a party defendant, which motion the court sustained, and subsequently made an order requiring the plaintiffs to make the city a party defendant within three days. The plaintiffs declined to comply with said order, whereupon a judgment of nonsuit was entered against them, and the action dismissed at their costs. The plaintiffs seek a reversal of

this judgment on the ground that the several rulings above mentioned were erroneous.

The first objection, that the court erred in denying appellants' motion to strike out the portion of the answer therein referred to, is not well taken. The statute provides that, if irrelevant or redundant matter be inserted in a pleading, it may be stricken out on motion of any party aggrieved thereby; and matter is irrelevant which has no bearing upon the question in controversy. If an answer alleges matter as a defense which is clearly impertinent to the cause of action, it may be stricken out as irrelevant. But if there be a doubt as to the sufficiency, in law, of the pleading, or if the alleged irrelevancy requires argument to establish it, the question should not be raised by motion, but by demurrer, which is the recognized mode of questioning the legal sufficiency of pleadings. The primary object of such a motion is to eliminate irrelevant and redundant matter from a pleading, and it is always supposed that something substantial will still remain. See Bliss, Code Pl., §§ 423, 424. And if an answer, as a whole, sets up a semblance of a defense to the action, its sufficiency cannot be determined on a motion to strike it out as irrelevant. *Walter v. Fowler*, 85 N. Y. 621. In this case, the part of the answer which appellants seek to strike out is, in effect, a plea of license from the city of Olympia, and is relied on by the respondent as a complete defense to the action. It is therefore neither irrelevant nor immaterial, and consequently not open to the objection urged against it. But its sufficiency was properly called in question by the appellants' demurrer, which was interposed on the alleged ground that the plea constitutes no defense to this action. It is claimed by the learned counsel for the respondent that the railroad was constructed in accordance with the ordinance of the city, and that, inasmuch as the city was empowered by its charter to authorize the build-

ing and operation of railroads in and upon its streets, such construction and operation of the road were and are lawful, and respondent is not liable to the appellants for any injury thereby done to their property. It is further insisted that, if appellants are entitled to any damages whatever, the city is liable therefor, and not the respondent. It is conceded that the city had the power to authorize the construction of the railroad on Seventh street, upon proper conditions, and it is not disputed that the railroad was constructed under authority given by the city; but it is claimed by the appellants, (1) that the power vested in the city by the legislature was exceeded in the ordinance under and by virtue of which the right to build the railroad in the street in front of appellants' premises was granted; and (2) that the authorization of the city was necessarily subject to, and limited by, § 16 of article 1 of the constitution of the State of Washington, which provides that "no private property shall be taken or damaged for public or private use without just compensation having been first made or paid into court for the owner," etc.

In order to determine the validity of the ordinance set forth in the answer as a defense to the action, it becomes necessary to ascertain what power was conferred upon the city of Olympia by its charter in regard to the construction of railroads upon the streets and public places, as well as the provisions of the city ordinance itself. In § 10 of the charter it is provided that—

"The city of Olympia shall have power . . . to authorize or prevent the location and laying down of railway tracks and street railways on all streets, alleys and public places; and no railway track can thus be laid down until the injury to property abutting upon the street, alley or public place upon which such track is proposed to be located and laid down, has been ascertained and compensated in the manner provided for compensation of injuries arising from re-grade of streets in § 113 of this act." Laws 1883, p. 109.

From this provision it appears that while the legislature empowered the city to authorize the location and laying down of railway tracks on the streets, in its discretion, it did not thereby undertake or assume that such authorization should operate as a shield against liability on the part of the grantee of such franchise to any lot owner upon the street for damages caused by the location of a railway thereon.    This is manifest from the language used, and no other interpretation can be given to it.    Indeed, when the legislature declared that no railroad track can thus be laid down until the injury to property abutting upon the street upon which such track is proposed to be located has been ascertained and compensated in a certain prescribed manner, it virtually made it the duty of the city to withhold the privilege of laying down railways in the streets until compensation is made for injuries thereby sustained by abutting owners.    The city, under its charter, had not itself the right to change the grade of streets without paying the damages resulting therefrom to owners of abutting property who had made improvements thereon with reference to the established grade, and therefore could not legally authorize the railroad company to do so.    Nor did it undertake to confer such right in this instance, except at street crossings and approaches thereto.    The ordinance in question provided that the railway company should construct its railroad in a cut or tunnel between certain specified streets, at its own expense, and not more than forty feet in width at any one point, and should wall in or timber up the sides thereof in a safe and secure manner, and for the entire distance thereof, up to the grade of Seventh street, or to any grade that might be adopted by the city council, and that said company should cover said cut, and maintain the same in good condition for public travel, in such a manner as to interfere with the use of said street in the least possible degree, and that the bridge or cover over

the same at Franklin street should not be more than three feet above the established grade at said point.    The respondent contends that under the issue raised by the demurrer it must be assumed that the grade of the streets was changed, if at all, only to the extent and in the manner prescribed by the ordinance, and, further, that if the railroad was constructed as authorized by the ordinance, then the appellants' property, in legal contemplation, was not damaged, and they are entitled to no compensation, at least from the railroad company.    But we are unable to accept these propositions as conclusive.    Even if it be admitted, for the purposes of the demurrer, that the fee of the street is in the city, as claimed by respondent, it does not follow that the appellants have not sustained direct and immediate damage by the building of the railroad in front of their premises.    In any event, if the appellants' property has been damaged in a manner different from that of the public generally by the appropriation of the street for railroad purposes, they are entitled to compensation; and damages, to be recoverable, are not confined to the land itself, but may only affect that which is incident thereto, and necessary to the use thereof.    The owner of a lot on a street in a city has a right to the use of the adjoining street which is distinct from that of the public, and such right is as much property as the lot itself (*Rude v. City of St. Louis*, 93 Mo. 408, 6 S. W. Rep. 257; *Burkam v. Ohio, etc., Ry. Co.*, 122 Ind. 344, 23 N. E. Rep. 799), and cannot be taken away or injuriously affected, without compensation.    It is alleged, in substance, as we have seen, in the complaint, that the respondent raised the established grade of the street in front of appellants' land five feet, and thereby destroyed access to the same, without the consent of appellants.    That allegation shows a cause of action in favor of appellants, and we think that the affirmative matter demurred to in no wise constitutes a defense thereto.

The grant of the city transferred no rights of the appellants to the respondent. It simply granted such rights as the city had power to confer; and it had no power, as we have already intimated, to authorize any interference with the proprietary rights of the appellants. It follows, therefore, that the demurrer should have been sustained.

But it is urged on behalf of the respondent that, if any recovery can be had in this action, the city is the party liable, and not the railroad company. This contention cannot be sustained. It is not shown or alleged that the city did any of the acts or things of which appellants complain. It only enacted the ordinance granting the privilege to the respondent to use the street in the manner therein specified, and for that act no private action will lie. Elliott, Roads & S., 532; *Burkam v. Ohio, etc., Ry. Co., supra.* And, the city not being liable to be sued for its action in permitting the respondent to construct its railroad in the streets in the manner it did, it follows that the court erred in dismissing the action for failure to make the city a party defendant.

Some other questions were raised by counsel in their briefs, which we have not deemed it necessary to consider in passing upon the issues raised by the pleadings.

The judgment is reversed, and the cause remanded to the court below, with directions to sustain the demurrer to defendant's special answer.

DUNBAR, C. J., and SCOTT and STILES, JJ., concur.

HOYT, J. (*dissenting*). — I am unable to concur in the foregoing opinion. I think that, under the peculiar provisions of its charter, the city of Olympia is alone responsible to adjoining owners for damages to their property caused by the construction and operation of a railroad in the street in front thereof. Sec. 10 of said charter provides that no railroad shall be laid down in any of the streets of the city until such damages have been ascertained

and paid, and contains an express provision that such damages shall be ascertained in the manner ·provided for in § 113. The provisions of said § 113 are applicable to the ascertainment of damages as between the city and the property owner, but are entirely inapplicable as between a private corporation and such owner. It follows that, if the provisions of said sections are to be given force, there was no way provided by law by which the railroad could have proceeded to have the damages ascertained and paid before its construction, while the power of the city in that regard was ample. I see no reason whatever why these two sections cannot be given full force, and, if they can, the well settled rule of construction makes it the duty of the courts so to do. The provisions of said sections are plain and unequivocal, and thereunder it is made the duty of the city not to allow a railroad to be constructed on any of the streets of the city until the damages have been first ascertained, and the machinery for the ascertainment of such damages is fully provided, as between the city and the adjoining owner. In view of these facts, I think it should be held that the city, in legal effect, so far as the rights of adjoining proprietors are concerned, is the agency which affects their property; that their rights must be adjusted with the city. It does not follow that the city will necessarily bear the burden of ·the damages which may be assessed. It has power to fully protect itself at the time it grants the right to the railroad to occupy the street. The numerous authorities cited in the opinion of the majority of the court do not seem to me to be at all applicable to the case at bar. In none of them was the question of the construction of a charter at all like this one involved. This case, to my mind, turns entirely upon the construction of the two sections of the charter above referred to; and I see no escape from the conclusion that, whenever the city passes an ordinance authorizing the use of any of its streets

for railroad purposes, it becomes responsible to those owning property adjoining such streets for all damages growing out of an occupation by a private corporation in pursuance of the provisions of the ordinance granting such rights, and that under such provisions there could be no liability on the part of the corporation occupying the street, so long as it kept within the terms of the ordinance authorizing it so to do.    The ordinance granting rights to the defendant in this case was therefore material; and, if the pleading on the part of the defendant showed that it was acting thereunder, and in pursuance of the rights thereby granted, such pleading set up a good defense to the action.    Under the circumstances of the case the city of Olympia might not have been a necessary party to the action; but no harm could result to the plaintiffs by having the whole matter adjudicated in one suit, rather than to have the question of the liability of the railroad company first determined, and then, if it was found that it was not liable, have the question of the liability of the city determined in a separate action.    In my opinion the demurrer to the separate defense was rightfully overruled; no error prejudicial to the plaintiff appears in the record; and the judgment ought to be affirmed.