[No. 6853.  Decided January 15, 1908.]

THE STATE OF WASHINGTON, *on the Relation of O. P. Burrows et al., Plaintiff,* v. THE SUPERIOR COURT FOR CHEHALIS COUNTY *et al., Respondents.*[1]

EMINENT DOMAIN—PETITION — DESCRIPTION OF PROPERTY — BOOM COMPANIES.  In condemnation proceedings by a boom company, the petition sufficiently describes the property sought to be taken, where the facts are alleged as to its present and proposed construction of its boom, that the relators' lands, described by reference to government surveys, are contiguous thereto, and condemnation is asked of certain definite shore rights and privileges appurtenant to said lands, where it is not sought to take any lands by metes and bounds.

SAME—DEFENSES—INSUFFICIENCY OF PROPERTY.  Condemnation of certain shore rights and privileges for the use of a boom company cannot be objected to on the ground that the rights to be condemned are not sufficient to enable it to transact its public business without the use of other property belonging to the defendants.

SAME—PROPERTY SUBJECT.  Riparian rights and privileges appurtenant to the shore line of a navigable river are property, subject to condemnation for the use of a public service boom company.

SAME—LOGS AND LOGGING—BOOM COMPANIES.  Where a boom company's plat was made from the government field notes of the meanders of a river, and shows the contiguous land, it is sufficient to authorize condemnation proceedings to appropriate the use of an unmeandered slough extending into such contiguous lands, within Bal. Code, § 4379, requiring the map to show such of the shore lines of waters and contiguous lands as are proposed to be appropriated.

SAME—PROCEEDINGS—DEFENSES—ATTEMPT TO PURCHASE.  Defendants who denied the right of a boom company to appropriate their property cannot raise the objection that the company did not first attempt to acquire its rights by purchase.

SAME—PUBLIC USE.  The fact that no logging is being done upon a stream except by a corporation whose stockholders are identical with those of a boom company, does not show that condemnation of a boom site by such corporation is for a private use.

Certiorari to review an order of the superior court for Chehalis county, Linn, J., entered June 15, 1907, after a hearing

[1] Reported in 93 Pac. 423.

on the merits, adjudging a public use and directing an assessment of damages in a condemnation proceeding. Affirmed.

*J. W. Robinson*, for relators.

*J. B. Bridges* and *Ben Sheeks*, for respondents.

Crow, J.—On March 28, 1907, the Grays Harbor Boom Company, a corporation, instituted in the superior court of Chehalis county three separate proceedings to condemn certain property rights, the first being against O. P. Burrows and wife, the second against J. O. P. Lownsdale and wife, and Ladd & Tilton, and the third against F. K. Hiscock. After preliminary decrees were entered adjudging a public use, all of the defendants, upon stipulation, applied to this court in this one proceeding for a writ of certiorari, and the writ having been issued, the decrees are now before us for final review.

The respondent The Grays Harbor Boom Company was incorporated under the laws of Washington in 1893, with authority to conduct a booming business in the Humptulips river and elsewhere. Within the statutory time it filed in the office of the secretary of state a plat or survey of so much of the shore lines of the waters of the Humptulips river and lands contiguous thereto as it proposed to appropriate, and without unreasonable delay proceeded to construct and operate a boom. Thereafter the relators, claiming it was interfering with certain of their private property rights as riparian owners, instituted equitable actions to enjoin such interference. Decrees in their favor were affirmed in *Burrows v. Grays Harbor Boom Co.*, 44 Wash. 630, 87 Pac. 937; *Lownsdale v. Grays Harbor Boom Co.*, 44 Wash. 699, 87 Pac. 943; and *Hiscock v. Grays Harbor Boom Co.*, 44 Wash. 699, 87 Pac. 943. Later this court, upon motion, entered orders staying enforcement of the several decrees until the respondent could institute and prosecute condemnation proceedings.

The Humptulips river, which empties into Grays Harbor, is, for a distance of three miles above its mouth, subject to a tidal flow which reaches and passes the lands of relators. Within the Lownsdale lands is a navigable tide water slough known as "Jessie's slough," connecting with the river, which the respondent has used, and is now using, in its booming operations. It alleges that its boom commences about the middle of the river near the southern boundary of Lownsdale's land, and extends northerly, occupying that portion of the stream lying between its center and the west bank; that the Jessie slough, which is not meandered, connects with the west side of the river and is practically included in the boom; that the occupancy and use of the slough is necessary for receiving, storing, and sorting logs, which will interfere with its navigation; that in so using the slough it will be necessary for servants of the boom company to also use ten feet of its westerly bank by walking thereon when handling, driving, booming, and sorting logs, such use of the west bank not to be exclusive but concurrent with that of the owners of the land.

The evidence shows that, at the time of the hearing, the upper end of the boom as then constructed was immediately below the land of the relators Burrows and wife; that the United States government had granted the respondent permission to extend its boom further up the river past the Burrows land, leaving for navigation an open channel fifty feet in width on the Hiscock or easterly side of the river; that the respondent was at the time perfecting arrangements to so extend its boom; that the purpose of such extension is to aid navigation; that heretofore logs coming down the river on freshets, in great quantities, not controlled by the respondent, would first fill the boom and then back up and fill the upper channel of the river opposite the lands of Burrows on the west and Hiscock on the east, and that the boom when extended and enlarged will avoid this difficulty, by receiving

all logs and timber products and permitting the eastern channel of the river to remain open for navigation to the width
of fifty feet.    By these proposed extensions and improvements, respondent is endeavoring to avoid any continuance of
the acts enjoined in *Burrows v. Grays Harbor Boom Co.* and
the other cases above mentioned, and it contends that such
riparian and property rights of the relators as it will hereafter need it is now seeking to condemn.

As against the relators Lownsdale and wife and Ladd &
Tilton, respondent asks that it be permitted to condemn and
appropriate the right to occupy with sawlogs and other
timber products that portion of the river which is between its
westerly bank and the boom, also to interfere with the relator's shore rights and right of access to and from their lands,
and to appropriate the right to occupy the whole of the
waters of the slough within their lands, together with a right
of way along its westerly bank as above mentioned.

As against the relators Burrows and wife, respondent asks
that it be permitted to appropriate and condemn the right to
occupy with sawlogs and other timber products that portion
of the Humptulips river opposite their lands, and the right
to interfere by so doing with their right of navigation of that
portion of the river so occupied, with their right of access to
and from their lands, and with their appurtenant shore rights
and privileges.    As against the relator Hiscock, it asks that
it be permitted to appropriate and condemn the right to
occupy the waters of the river with logs and other timber
products consigned to it where the river borders upon his
land, and the right to interfere with his right of navigation
and access to and from his lands, and his appurtenant shore
rights and privileges.

The relators' first contention is that the preliminary decrees are void, or at least erroneous, for the reason that the
descriptions of the property sought to be taken are too indefinite within the requirements of the eminent domain statute.

Bal. Code, § 5637 (P. C. § 5102).   The petitions, after al-
leging the facts as to the present and proposed construction
of the boom, further allege that the lands of the several re-
lators are contiguous to the river.   They describe the lands
by reference to government surveys and public plats now of
record, and then allege that it will be necessary for respondent
to occupy the river and interfere with shore rights and priv-
ileges of the several relators appurtenant to said lands, as
above mentioned.   Respondent thus seeks to condemn certain
definite rights with which it must necessarily interfere, but
asks no other property of the relators Burrows and Hiscock.·
In other words, it does not seek to take any of their lands
by metes and bounds, but only certain private shore rights
and privileges appurtenant thereto.   As against the Lowns-
dales, it further seeks to condemn certain rights in the Jessie
slough and upon its west bank, which are set forth in the peti-
tion and decree.   The descriptions are sufficient to identify
the property rights sought to be taken and to meet the re-
quirements of the statute.

The relators further contend that the respondent is seek-
ing to condemn limited rights and easements which when
taken will be insufficient to enable it to transact its business
as a public service corporation without using additional prop-
erty of the relators not sought to be appropriated.   We fail
to understand how the respondents' alleged failure to condemn
sufficient property for its public needs can afford the relators
any ground of complaint.   The record shows that the re-
spondent is endeavoring to appropriate such property rights
as it thinks it will need in its corporate business, so that it
may use the same without disobeying the injunction decrees.
That it might do so, the enforcement of those decrees was
temporarily suspended by orders of this court, which orders
of suspension will become inoperative upon the final determina-
tion of these condemnation proceedings.   Respondent will then
act at its peril if it interferes with any property or rights of

the relators protected by the injunctions, but not appropriated. The relators' rights have been heretofore adjudicated in their equitable actions, and upon the final determination of these condemnation proceedings they will be at liberty to immediately enforce and protect such of their property rights as may be thereafter illegally invaded by the respondent. The condemnation will only authorize it to use property legally appropriated.

The injunctions were granted in the equitable actions because it appeared that the respondent was taking and damaging certain private property rights of the relators without just compensation, in direct violation of § 16, art. 1, of the state constitution. The respondent contends that it is now endeavoring to proceed in strict compliance with the constitution, the eminent domain statute, and the injunctive decrees, and it should be permitted to do so without being required to condemn, at the relators' instance, lands which it insists it will neither need nor use. If respondent is not proceeding in good faith—a condition not yet appearing—the relators will be afforded ample protection when its bad faith or wrongful acts shall assume substantial form. The relators' riparian rights and interests here involved have been adjudicated to be property rights, which we now hold to be subject to condemnation for public use. This holding is in harmony with principles announced in the following cases pertaining to rights of a somewhat kindred nature: *Hatch v. Tacoma, Olympia & Grays Harbor R. Co.*, 6 Wash. 1, 32 Pac. 1063; *New Whatcom v. Fairhaven Land Co.*, 24 Wash. 493, 64 Pac. 735, 54 L. R. A. 190; *State ex rel. Smith v. Superior Court*, 26 Wash. 278, 66 Pac. 385; *Seattle Transfer Co. v. Seattle*, 27 Wash. 520, 68 Pac. 90; *State ex rel. Smith v. Superior Court*, 30 Wash. 219, 70 Pac. 484.

Mr. Lewis, in the second edition of his work on Eminent Domain, at § 56, says:

"If property, then, consists, not in tangible things themselves, but in certain rights in and appurtenant to those things,

it follows that, when a person is deprived of any of those rights, he is to that extent deprived of his property, and hence, that his property may be taken, in the constitutional sense, though his title and possession remain undisturbed; and it may be laid down as a general proposition, based upon the nature of property itself, that, whenever the lawful rights of an individual to the possession, use or enjoyment of his land are in any degree abridged or destroyed by reason of the exercise of the power of eminent domain, his property is, *pro tanto*, taken, and he is entitled to compensation."

If riparian rights, right of access, right of light and air, and other kindred, intangible rights appurtenant to real estate, are property, they are certainly such property and such an interest in real estate as an owner would be entitled to alienate, thereby conveying an easement. If such rights may be conveyed, we see no reason why they may not, under the right of eminent domain, be condemned when necessary for public use, without an appropriation of the actual land itself.

The relators further contend that the respondent is not seeking to condemn the westerly bank of the river, although it will necessarily be used as a retaining wall for the boom, and that for this reason it should not be permitted to proceed unless it seeks to appropriate the bank and a portion of their lands also. The respondent insists that it does not intend to use any private property of relators in the banks of the river; that although the banks may at times hold logs in the boom, they also hold the water in the river which floats the logs; that such use of the banks and the water is a necessary incident to the public rights of navigation to which respondent is entitled under the statutes of this state, and that it will only use the banks in the same manner that any other person will use them in navigation. As heretofore suggested, the relators will sustain no loss if the respondent fails to condemn sufficient property rights for its public use.

As to the relators Lownsdale and wife and Ladd & Tilton, it is contended that the map of location filed by the respond-

ent with the secretary of state does not show the Jessie slough as being within the property which it then intended to appropriate, and that it cannot now condemn the same, or any rights therein. The map was made from the government field notes taken from the office of the surveyor general. These field notes do not, nor does the government survey, show the existence of the slough. The evidence shows that the slough was not meandered, and that the present physical location of the river itself does not exactly correspond with the government field notes and survey which have been made for more than fifty years. Bal. Code, § 4379 (P. C. § 7112), requires a boom company, within ninety days after its articles of incorporation have been filed, to file in the office of the secretary of state a plat or survey of so much of the shore lines of the waters of the state *and lands contiguous thereto* as are proposed to be appropriated, such plat to be made from the records in the United States surveyor general's office of this state, or by a competent surveyor subsequent to an actual survey. This plat was made from the records in the surveyor general's office. It not only shows the stream as meandered by the original field notes, but also shows the relators' and other lands contiguous thereto. If it be conceded that the slough is not a part of the river as meandered, and shown by the original government survey and field notes, it is as shown by the evidence actually within the lands of Lownsdale and wife, which are included in the plat and are therefore subject to condemnation.

The relators contend that, by these condemnation proceedings, as prosecuted, the respondent is endeavoring to entirely close the river from navigation, in violation of the statutes of the United States and the permit granted to respondent by the United States government, that the appropriation thus attempted should not be decreed by the courts of this state; and that any such judicial action would constitute an attempted grant of judicial authority to respondent, permitting

it to maintain a public nuisance in the navigable waters of the
state. The evidence does not sustain this contention. It has
been shown that the respondent by the extension of its boom
now being made under permission of the United States gov-
ernment, will be enabled to, and will, keep open for navigation
a channel fifty feet in width on the easterly side of the
river, and that it is now seeking to appropriate property
rights of the relators as above mentioned, to aid it in carrying
out that purpose.

There is no merit in another suggestion made by the re-
lators that the respondent cannot condemn because it did not,
prior to the commencement of these proceedings, endeavor to
obtain by purchase the rights and privileges it now seeks to
appropriate. The evidence shows that such endeavors were
made by respondent, but even though the contrary appeared,
yet the position of the relators in this proceeding will not per-
mit them to now present any such objection. *State ex rel.
Skamania Boom Co. v. Superior Court,* 47 Wash. 166, 91
Pac. 637.

Relators further contend that the respondent is not seek-
ing to condemn for a public use, but for a private purpose.
They base this contention on the proposition that no logging
is being done upon the stream except by a certain other cor-
poration in which the stockholders are identical with those of
the respondent corporation. The evidence does not sustain
this contention, which in any event is without merit, as shown
by the opinion in *State ex rel. Wilson v. Superior Court,* 47
Wash. 397, 92 Pac. 269, recently rendered by this court.

The relators further contend that no public necessity for
the condemnation has been shown. Without discussing the
evidence in detail, all of which we have carefully read and
considered, we will state that it is amply sufficient to sustain
the finding of the trial court that such public necessity does
exist. The foregoing discussion substantially covers all con-
trolling points presented by the relators. We will, however,

state that, having examined the entire record, together with all the assignments of error made and discussed in the briefs, we are unable to find that the trial court has committed any prejudicial error.    The judgments are affirmed.

HADLEY, C. J., MOUNT, ROOT, FULLERTON, RUDKIN, and DUNBAR, JJ., concur.