GEORGE D. SHADBURNE et al. *v.* WILLIAM AMONETT, Executor.

Donations between married persons, made during the marriage, are revocable at the will of the donor.

It is better for parties to vindicate their rights of property under their own names, and not under the cover of simulated titles.

APPEAL from the District Court of Madison, *J. N. T. Richardson,* J. Stacy and *Sparrow,* and *A. Snyder,* for plaintiffs. *Stockton* and *Steele,* and *J. J. Amonett,* for defendants. The judgment of the court was pronounced by

EUSTIS, C. J. In June, 1845, an execution was taken out on a judgment rendered in the suit of *Silas Lillard* v. *David Stanbrough,* and the sheriff seized certain lands in the parish of Madison. The present suit is a third opposition made to the sheriff's sale, by *George D. Shadburne* and *Sybil Stanbrough,* his wife, claiming, as the property of the wife, these lands thus seized, as the property of *Stanbrough,* the judgment debtor. There was a judgment in the district court, by which the opposition was sustained, and *Sybil Stanbrough,* the wife of *Shadburne,* was adjudged to be the owner of the lands seized, and quieted in her title and possession thereof. This judgment was rendered on the verdict of a jury. The representative of the original plaintiff in execution has appealed.

The petition alleges, that *Sybil Stanbrough* is the owner of the lands, by virtue of a donation made to her on the 14th of January, 1847, by *Robert M.*

*Scott*, by authentic act passed before the recorder of the parish of Madison ; that *Robert M. Scott* acquired title to the lands; by purchase at sheriff's sale, made on the 1st of August, 1846, under an execution against *Stanbrough*, issued on a judgment rendered against him in favor of *J. C. Garthwaite*, in the parish of Concordia, which judgment was recorded in the parish of Madison, in 1839 ; that under said donation from *Scott*, the plaintiffs have been in possession of the lands since the date thereof, and that since the sheriff's sale to *Scott*, *Stanbrough* has had no interest in or title to the lands.

The answer charges, that the sale to *Scott*, and the donation, were mere contrivances to defeat the rights of the creditors of *Stanbrough*, who is insolvent, were simulated, and are null and void; that the judgment under which the sheriff's sale was made to *Scott* really belonged to *Stanbrough* himself, and was kept alive and used for his sole benefit; that *Stanbrough* has always been in possession of the lands; which remained unchanged by the transfers on which the suit is based, etc.

A verdict on issues of this kind ought not to be disturbed, except for grave reasons, and on the strongest convictions on the part of the court of its illegality, and a scrutiny of the evidence adduced on the trial becomes necessary.

It appears by the testimony of *Scott*, that he bought the lands at the sheriff's sale for and on account of *Shadburne ;* that he paid no money for them, gave no security for the price ; that he held the lands in his name at the request of *Shadburne ;* and that the object of *Shadburne*, in putting the lands in his name, was to avoid the effect of a judgment then existing against him as the surety of one *Shannon*. He made the donation to *Mrs. Shadburne*, at the instance of her husband. She is the neice of *Stanbrough*, the judgment debtor. It results, from this testimony, that, in point of fact, the donation of the lands was from the husband during their marriage, and consequently recoverable at the will of the husband. C. C. 1742.

It is not attempted to infringe, in the slightest degree, on the credit of this witness. It is conceded, that his testimony reveals the truth. There was really no donation, in its proper sense, from *Scott*, nor any motive or reason for one to *Mrs. Shadburne*. The purchase at sheriff's sale, by him, was a mere simulation ; he never considered himself thereby the owner of the land. It was in his name, for a particular purpose, which he discloses ; and it is almost a necessary conclusion, that the transfer to the wife, at the instance of the husband, was in furtherance of the original object, to avoid subjecting the lands to seizure under the judgment against *Shadburne*. *Scott* never took possession of the lands, nor is any act of ownership by him or *Mr. Shadburne* shown to have been exercised. It is impossible to consider this donation of the lands as a *bonâ fide* act translative of the property to *Mrs. Shadburne*.

The sheriff's sale, and the act of donation, are the titles declared upon in the plaintiff's petition; none other are mentioned. The claims of *Mrs. Shadburne* alone, are stated in the petition, and the judgment is asked for her benefit, and is in accordance with the prayer of the petition. The husband is a party to the suit; but he must be considered as a party, for the purpose of assisting his wife, and not as a plaintiff, for he sets forth no title and asks nothing from the court.

It is contended, that *Mrs. Shadburne* can avail herself of the title of her husband, and that this title is supported by the verdict. We will examine this title, observing, that it is better for parties to vindicate their rights of property under their own names, and in their own persons, and not under the cover of simulated titles. We have, on more than one occasion, discountenanced attempts

of this kind, as they embarrass the lawful pursuit of creditors and increase the difficulties of litigation; and as nothing but truth ought to have place in the administration of justice, nothing short of necessity, in the furtherance of justice, would authorize a tribunal to give effect to a simulated title.

We have stated, that neither *Scott* nor *Mrs. Shadburne* took possession of the lands. The same is true with regard to *Shadburne;* and we do not find the original possession of the lands by *Stanbrough,* as affected by an act of any adverse ownership, or in any respect changed. It is proved, that *Stanbrough* cultivated a part of the lands in 1848; and it is not proved that they were rated on the tax list in the name of any other than the original owner. Supposing the title of *Shadburne* to be only in issue, what is its validity, wanting, as it does, the element of possession? The allegations of the defendant are in effect, that *Stanbrough* himself bought the judgment under which *Scott* purchased the lands at sheriff's sale, and it was held in the name of another for the purpose of being used for his, *Stanbrough's,* benefit in defeating the judgment of *Lillard* against him, the latter being posterior in date to the former. The main evidence in support of these allegations is composed of the testimony of witnesses taken under commissions, of which, as well as of the documentary evidence, we have as ample means of judging as the jury had.

The relations between *Shadburne* and *Stanbrough* require some notice; not that, of themselves, they would be of any weight one way or the other, but their concurrence with the hypothesis of the defence, rather supports it than otherwise. *Shadburne* had been, for several years, the family physician of *Stanbrough,* and had married his neice. In June, 1845, an execution was issued on this *Lillard* judgment against *Stanbrough,* at whose instance proceedings under it were enjoined on the ground, that he, *Stanbrough,* had purchased the judgment at sheriff's sale, made in February, 1844, and that thereby the judgment debt had become extinguished. This identical ground is stated in the plaintiff's petition, as one of the means for defeating the seizure and sale of the lands in dispute, to which the present opposition is made. And the question is asked, and has not been answered, as to what right or interest the plaintiffs had in attacking the regularity of the defendant's proceedings in execution, which was a matter exclusively between the creditor and the judgment debtor. If the lands in dispute belonged to the plaintiff, *Mrs. Shadburne,* her opposition to the seizure of them must prevail; and she can have no interest in setting aside the proceedings in execution, which can only reach the lands of the judgment debtor, and not hers.

It appears, that *Stanbrough,* in obtaining his injunction staying proceedings on the *Lillard* judgment, had not given an injunction bond with security, and on the 21st of November, 1845, an order of court was made requiring him to give security. On his failing to comply with this order, his injunction was dismissed, with ten per cent damages and costs, by judgment of the court rendered on the 28th of the same month, November, 1845. We find, on the 24th of this month, *Shadburne* addressed a letter to *Garthwaite,* in New Orleans, proposing to purchase his judgment against *Stanbrough,* and offering him four hundred dollars for it. On the 10th of January, 1846, *Garthwaite* wrote to *Shadburne,* from Newark, New Jersey, referring him to *Mr. William Alling,* of New Orleans, who had full authority to close the matter, and to assign the judgment to the purchaser. Early in February of that year, *Shadburne* presented an open letter from *Stanbrough* to his commission merchant in New Orleans, requesting him to aid *Shadburne* in buying a judgment, and that he was refer-

red to *Mr. William Alling* for that purpose. On this request, he paid *Shad-burne* four hundred dollars, which he charged to *Stanbrough*, and the latter repaid him. The transfer of the judgment bears date Newark, New Jersey, January 10, 1846, and is filled up in the name of *Shadburne*, but was received in blank by *Mr. Alling*, and was by him delivered to the person receiving it, on his paying the sum of four hundred dollars. A feeble attempt was made to weaken the effect of these facts, by showing that *Shadburne* had not been paid for seve-ral years' services as the family physician of *Stanbrough*, and thereby to estab-lish that the four hundred dollars was on that account. The evidence on this point is far from being definite or satisfactory; and we consider, that it is clearly proved that the money of *Stanbrough* paid for this judgment, and that the pur-chase was made by *Shadburne*, for his benefit. This being the case, we find a proper motive for *Shadburne's* placing the judgment in the names of others, so that it might be used for the original purpose of aiding *Stanbrough* in defeating the execution on the *Lillard* judgment, without any interference from his, *Shadburne's*, creditors.

Having come to these conclusions, on a careful consideration of the evidence, we are bound to give the defendant the benefit of them, and to hold the lands, which are the subject of the present suit, liable to execution as the property of the judgment debtor, *David Stanbrough*.

The judgment of the district court is therefore reversed, and judgment is rendered against *George Shadburne* and *Sybil Shadburne*, his wife, on the opposition to the seizure and sale of the lands seized by the sheriff; with costs in both courts.