LAND, J.
This suit was instituted on June 22, 1905, to compel the specific performance of a promise of sale of certain real estate situated in the city of New Orleans. This promise was evidenced by a written agreement signed by the parties, and bearing date May 9, 1905.
Defendant excepted that the petition disclosed no cause or right of action, that the agreement did not sufficiently identify the property so as to authorize the specific per *1071 formance ol the alleged contract, and that the agreement did not constitute an existing and complete contract.
These exceptions were maintained and the suit was dismissed. On plaintiff’s appeal to this court the judgment was reversed, the exceptions were overruled, and the cause remanded. Girault v. Feucht, 117 La. 275, 41 South. 572. The defendant having died testate pending the appeal, her universal legatees were made parties. They answered, pleading (1) the general issue; (2) lesion beyond moiety — that is, that the property at the date of the sale was worth more than double the price stipulated; (3) that the agreement was obtained by fraud, undue influence, and deception practiced by the plaintiff on Barbara Eeucht and was signed by her in ignorance and through error; that she was living alone, and aged, sick, and infirm, incapable of understanding the contents of said document; that she was at the time seriously ill, under treatment of a physician, suffering from a painful mortal disease, addicted to the excessive use of spirituous liquors, and under the influence of intoxicants to such an extent as to prevent her from exercising her free will ■ and judgment; that the said Barbara Eeucht was a German, and signed said agreement in German, was imperfectly acquainted with English, and did not understand the meaning of the words of said agreement; and that the specific performance of said agreement under the circumstances should not be coerced.
The case was tried, and there was judgment in favor of the plaintiff ordering the specific performance of the agreement. Defendants have appealed.
Mrs. Barbara Eeucht was born in Germany, but had spent most of her life in the city of New Orleans. She died on March 21, 1906, leaving an estate appraised at $39,316.40. She left a last will executed before a notary, wherein she instituted her two grandchildren as universal legatees, and made special legacies to her two sisters-in-law in Europe. The testatrix provided in detail for her own funeral expenses, limiting the total amount to $300, and made a perpetual provision for the care of her tomb. The inventory of her estate shows that she left $6,760 in currency in her bank box, four improved lots, and a small quantity of movables, the total aggregating $39,316.40. The record shows that the real estate was purchased by her at different dates between the years 1871 and 1890.
The record further shows that in the year 1905 Mrs. Eeucht was living alone in one of her houses, and presumably attending personally to her own business, as the evidence does not disclose that she had any agent for the management of her affairs. She had rents to collect, taxes to pay, and property to look after.
On March 13, 1905, Mrs. Barbara Feueht authorized Henry Chiapella to sell her two lots in Basin street for the price of $9,500 net, and out of this amount promised to pay him a commission of $200. This mandate was limited to a period of 60 days.
On May 9, 1906, Mrs. Barbara Eeucht agreed to sell the same properties to the plaintiff for the price of $9,500, of which $950 was to be deposited in a certain bank subject to the order of both parties, the same to be held in escrow until the titles were examined and the act of sale duly passed, when the said sum was to be paid over to the Widow Barbara Eeucht as a.part of the purchase price. This 10 per cent, deposit was duly made. On June 8, 1905, Mrs. Barbara Feueht revoked the mandate which she had given Henry Chiapella on March 13th preceding, and on the same day served a written notice on the plaintiff as follows:
“You are notified that I do hereby recede from and withdraw from the pretended agreement dated May 10, 1905, whereby you agreed to purchase from me the property and all improve *1073 ments thereon situated on Basin street, bounded by Basin, St. Louis, Kampart, and Toulouse streets for the price and sum of $9,500.”
This notice refers to the agreement of date May 9, 1905.
These two notices show that Mrs. Barbara Feucht remembered both the mandate and the agreement to sell, and was acquainted with their nature and contents. Under legal advice she claimed the right to revoke the one and to recéde from the other. There is neither notice, any intimation of fraud, mistake, or error. When two weeks later this suit was instituted, it was met, among other exceptions, with the following one:
“That said alleged agreement of sale does not constitute an existing and complete contract, and does not contain any of the essentials required to make it binding and enforceable.”
The notice and the plea show what in June, 1905, was the legal attitude of Mrs. Barbara Feucht as to the contract sued on. After the death of Mrs. Barbara Feucht, her grandchildren and universal legatees answered the petition, and alleged that their grandmother was at the time and had been for months previously “addicted to the excessive use of spirituous liquors, and under the influence of intoxicants to such an extent, as to prevent her from exercising her free will and judgment.” That the old woman was a hard drinker and got drunk is shown by the evidence, but it is not proven that she was drunk all the time, or was mentally incapable of-managing her own affairs in May or June, 1905. Mrs. Feucht’s attending physician admits od cross-examination that she had no disease of the mind 10 or 12 months before her death. The plaintiff testified that Mrs. Feucht was not under the influence of intoxicants when the agreement of May 9, 1905, was made, that the price was reached by a compromise after a good deal of bargaining, and that Mrs. Feucht delivered up her muni-ments of title for examination. In this last transaction Mrs. Feucht saved the commission -which she had promised to pay Chiapella for a sale of the property at the same price.
Plaintiff further testified that one Mr. Boh, a neighbor, was present, and was called in a» Mrs. Feucht desired to consult him. Mr. Boh was not called to rebut this testimony. As-already stated, Mrs. Feucht must have had mind enough to manage her own affairs, and evidently remembered and understood the-transactions with Chiapella and the plaintiff. She had mind enough to consult her attorney and to follow his advice, and in her last days-, she had will enough to 'sober up and mind enough to dictate very clearly to the notary what dispositions she wished to make of her-property.
The defendants have failed to prove that their ancestor was drunk when she made the-contract with the plaintiff, or was incapable from any cause of exercising her free will and judgment. Nor does the evidence show any fraud, error, or mistake in the confection of the agreement. For nearly two months Mrs.. Feucht had been considering the question of" selling this property for the same price as. shown by her mandate to Chiapella.
It is pleaded, however, that the sale should be avoided for lesion . beyond moiety. The-vendor may be relieved if the price given is. less than one-half of the value of the immovable sold. Civ. Code, arts. 1861, 1862, 2589, 2590.
The burden of proving the value of the-property sold at the time of the contract is, on the vendor. Civ. Code, art. 1870.
In Demaret v. Hawkins, 8 La. Ann. 484, the-court said:
“The right to rescind a sale for lesion beyond, moiety is the only restraint upon the liberty of the citizen to bind himself and his property according to the dictates of his own judgment, and the evidence relied on to establish that right should be peculiarly strong and conclusive.”
In the same case the court further said:
“Probable estimates are at best an inferior kind of evidence, admissible only when no better can be had, and they seldom carry conviction to the- *1075 mind. In tlie case for instance 32 witnesses were examined, and made as many different estimates, ranging from $22,637 to $42,250.”
In Parker v. Talbot, 37 La. Ann. 25, the court said:
“As stated, the valuation varies from $2,000 to $3,000; and it is incumbent on the defendant praying in reconvention for the rescission of a sale, to make out his case with legal certainty.”
It has been held and we reiterate the ruling that:
“If the value of property is not fixed within a certain range by the evidence, the lesion is a matter of conjecture, and must be considered as not proved. Beale v. Ricker, 7 La. Ann. 667; Demaret v. Hawkins, 8 La. Ann. 483.”
In Martin v. Delaney, 47 La. Ann. 719, 17 South. 264, the court said:
“We accent this lowest estimate because all above that is conjectural. Its value must be shown within a certain range. Parker v. Talbot, 37 La. Ann. 22.”
In the case at bar the estimates vary from $5,000 to $22,000. Three of defendant’s witnesses estimate the value at $20,000; another at from $20,000 to $22,000, and another at from $14,000 to $15,000. The two last were real estate agents. Pour witnesses for plaintiff, all real estate agents, testified that $9,500 was a full and fair price for the property. This wide difference among experts, amounting to more than 100 per cent., suggests that the value of the property in question was largely speculative. The evidence shows that such was the ease. A trunk line of railway was seeking to procure terminal facilities in the vicinity. The rumor of its advent created a boom in real estate values, which rose by leaps and bounds. There was no fixed prices in that “particular zone,” to use the expression of one of the experts. Every real estate •owner used his own judgment in estimating the sale value of his property. Mrs. Peucht fixed her own price, and for 60 days waited for a bidder, and then agreed to sell the property to the plaintiff. In the opinion of a majority of the real estate agents who testified in the case the price was full and fair; one stating that it was “liberal,” and another that it was “generous.” The district judge found that there was no lesion in the sale.
The absence of lesion strengthens the conclusion that there was no fraud or imposition in the transaction.
The contention of defendant that this suit should be dismissed because plaintiff testified that he purchased the property for another is without merit. The right of action follows the legal title which is in the plaintiff, and his obligation to convey to a third person does not concern the defendants. The case of Shadburne v. Amonett, 7 La. Ann. 89, has no application.
Judgment affirmed.