BREAUX, C. J.
Defendant bought from the late John Fleming the undivided half of six lots of ground, with improvements, designated as lots 7, 8, 9, 10, 11 and 12 in the square bounded by Prieur, O’Reilly, Aubrey, and Johnson streets and London avenue according to plan made by Castaing and Celles, architects, in the year 1865, deposited in the office of A. E. Bienvenu, notary.
On March 31, 1908, Fleming sold his undivided one-half interest to Henry F. Irion, the defendant, for $500.
In the following November of the same year, he brought this suit to have the sale rescinded for lesion. He valued his undivided half of the property at $2,500. He tendered to defendant the price of $500 he had received, with interest thereon.
In answer to the suit the defendant’s answer- is that the property is not worth near the amount alleged by plaintiff; that he only yielded to the solicitation of plaintiff in buying the property.
Fleming died after the suit had been brought. His children were made parties, and the suit was continued in their names.
The judge of the district court decided that there was lesion, and rescinded the sale, but condemned the plaintiff to return the capital, and he is silent as to the interest tendered.
[1] The question before us for decision is the value of the property. A number of witnesses were examined, six by plaintiff, and three by defendant. It was proven by *166 them that there are undesirable persons who dwell near, whose bad conduct reflected upon the whole number of those residing in the immediate vicinity; that hoodlums sometimes gather in this locality. Unquestionably this was objectionable, and doubtless prejudiced values, but is not controlling. We must accept the amounts fixed by witnesses, and reach a conclusion after having given them consideration.
Beginning with the witnesses for plaintiff. E. T. Fleming, however interested, is still a witness, and testified that the lots were worth $400 each in 1908; the house and barn $900. His own lots he had sold for a larger amount.
We reach the conclusion.,, that the testimony of this witness fixes the value of the land at $2,400, improvements at $900.
The dwelling and barn and other outhouses were insured in 1911 in the name of John Fleming at $1,000.
Peter Barbazon substantially corroborates E. T. Fleming. About the year 1908 he offered $2,500, an offer to which we do not attach importance. It is only mentioned in passing, for such evidence is easy, and not for that reason entitled to the least weight. The witness does not testify that the property was worth that sum.
Wm. A. Kernaghan, auctioneer and real estate agent, estimates its value at $2,400. He stated that for a class of people the property was desirable, not for another class.
The testimony of Henry Cambre is rather of the negative kind, and really proves very little, if anything.
John J. Fleming, another plaintiff since the death of his father, naturally places a high estimate upon the property.
Patrick M. Fallon, a relative of plaintiff, husband of one of the heirs, places a high estimate — $450 to $500 a lot.
Elias Paillet, dealer in real estate, was defendant’s first witness. Counsel examined him closely. He, it seems, bought property at low prices, and sold them for as much as he could get for them. 1-Ie had offered to buy defendant’s property. His idea of the value of property as well as the ideas of one or two others of defendant’s witnesses were at variance with the general trend of the testimony. He mentions -deals of his own, in one instance involving a large amount, property which must have been of some value, not far from the property claimed by plaintiff.
The evidence for defendant of another dealer in land varies less from the general trend of the testimony. Another witness for the defendant fixed the value as follows:
“The value I would have put upon the lots of that property would have been $150 the lot, improvements in the house to be worth about $350; and the stable, $300.”
This witness has some experience in estimating property. If he intended to fix the value at $25 a lot, that would be entirely different from all other testimony. If he intended to fix the value at $150 the lot — that is, one lot — it would be in keeping with conservative estimates. Be that as it may, we pass to other considerations.
The improvements were insured annually for a number of years for $1,000 per annum. It is not probable that insurance companies would insure improvements of very little value for that amount. One-half of the property was owned by the vendor, and he had the usufruct of the other half as it had passed to him from the community; his wife being dead and it being community property.
One of defendant’s grounds is that property held in indivisión is not worth as much. He had by his purchase created the indivisión, and now complains of a situation brought on by himself.
Regarding the lawlessness of the inhabitants of the neighborhood, the offers made by several persons to buy the property does not *168 show that the bad conduct alleged has a very great influence in dissuading purchasers.
It is difficult to prove the value of property, for in the hands of one owner it may have considerable value and none in the hands of another. It is also an easy matter for an expert to reach the conclusion, without violence to his way of thinking, that land is valuable or that it is not.
Eor these and other reasons, all facts in matter of land value are to be considered, and no one fact or no one view of an expert should be controlling.
[2] We think it reasonable to agree with the district judge, who had the opportunity of hearing the witnesses, and to consider the question at first hand. It does seem to us that the undivided half of six lots (graded) and within city limits, and a tenantable dwelling house and other improvements may well be worth over $1,000. That was the opinion of the district judge. It is also ours. The value has been proven with reasonable certainty.
[3] The plaintiff tendered $526.44, being $500 purchase price and interest. The seller shall pay the purchase price which he has received with interest. Civil Code, art. 1878.
It is therefore ordered, adjudged, and decreed that the judgment appealed from is amended by increasing the amount to $526.44, and, as thus amended, it is affirmed, plaintiff and appellee to pay the costs of appeal.