ODOM, Justice.
 

 Charity Gee, a colored woman, sold to the defendant on March 20, 1935, 190 acres of land in the Parish of East Baton Rouge, about 12 miles south of the City of Baton Rouge. The recited consideration was $1,-500, paid and to be paid as follows: The sum of $73.50 paid in cash; the purchaser assumed, and obligated himself to pay, a mortgage on the land amounting to $326 with interest due thereon at 8 per cent for one year, and the balance of the price was represented by 110 notes of $10, each, payable monthly without interest.
 

 The deed stipulated that, “As a further consideration, the purchaser agrees' to allow the vendor free use and occupation of the dwelling, which she now occupies, together with Five (5) acres of land adjacent thereto, so long as she may live”. While the deed does not so recite, the defendant testified — and his testimony to this effect is not disputed — that there was the further consideration that the vendor was to have the use of the entire property for the year 1935 for the purpose of making and harvesting the crop of that year.
 

 About a month after defendant purchased the property, he sold it to Mr. and Mrs. B. E. Gibbens, and shortly thereafter he reacquired it from Mr. and Mrs. Gibbens, the consideration recited in each of these sales being approximately the same as that recited in the sale from Charity Gee to the defendant.
 

 Charity Gee died in 1938, leaving a last will by which she bequeathed to a colored tenant on her place, Abna Morris by name, all her property. He qualified as executor and, in his capacity as executor, on August 3, 1938, filed the present suit to set aside the sale which Charity Gee had made to the defendant Leon R. Kleinpeter on March 20, 1935, for lesion beyond moiety. He alleged that the property was actually worth on March 20, 1935, when Charity Gee sold it, not less than $5,250 cash, and that the sale was therefore null and void “for lack of an adequate consideration, or for lesion beyond moiety”.
 

 Defendant filed in limine an exception of no cause of action, the basis of which was that he was a third party to the transaction, having finally acquired the property from Mr. and Mrs. Gibbens. This ex
 
 *761
 
 ception was overruled. The defendant in his answer denied that the property had a value exceeding the amount stipulated in the deed from Charity Gee to him in March, 1935, as consideration for the sale. He alleged that the property was not worth more than $1,500 at the time the sale was made.
 

 The case, was tried on its merits, and there was judgment rejecting plaintiff’s demands and ordering the suit dismissed at his cost. From this judgment plaintiff appealed.
 

 The law applicable to suits of this kind is found in the Revised Civil Code under the heading “Of Lesion”. Article 1860 of the Code reads as follows:
 

 “Lesion Defined. Lesion is the injury suffered by one who does not receive a full equivalent for what he gives in a commutative contract. The remedy given for this injury, is founded on its being the effect of implied error or imposition; for, in every commutative contract, equivalents are supposed to be given and received.”
 

 Article 1861 of the Code provides that the law will not release a “person of full age, and who is under no incapacity, against the effect of his voluntary contracts, on account of such implied error or imposition, except in the two following cases”, one of which is:
 

 “2. In Sales of Immovable Property, the vendor may be relieved, if the price given is less than onerhalf of the value of the thing sold; but the sale can not be invalidated for lesion to the injury of the purchaser.”
 

 Article 1871 of the Code reads as follows :
 

 “Value Ascertained at Time of Sale. In all questions of lesioii the value of that which was the subject of the contract at the time of making it, is the rule by which the lesion is to be ascertained. Even in the case of minors, changes in value by subsequent events are not to affect the contract.”
 

 In the case of Girault v. Feucht, 120 La. 1070, 46 So. 26, it was held that a sale of real estate may be set aside if the price given is less than one-half the value of the property sold, and held that:
 

 “In such a case the burden is on the vendor to prove lesion beyond moiety by evidence peculiarly strong and convincing, and of such a nature as to exclude speculation and conjecture.” (Paragraph 1, Syllabus.)
 

 This case was followed and the above ruling approved in the case of Succession of Witting, 121 La. 501, 46 So. 606, 15 Ann.Cas. 379.
 

 In the case of Girault v. Feucht, supra, the court quoted with approval the following extract from the case of Demaret v. Hawkins, 8 La. Ann. 483:
 

 “The right to rescind a sale for lesion beyond moiety is the only restraint upon the liberty of the citizen to bind himself and his property according to the dictates of his judgment, and the evidence relied on to establish that right should be peculiarly strong and conclusive.”
 

 In the case of Fleming v. Irion, 132 La. 163, 61 So. 151, it was held that the in
 
 *763
 
 trinsic value of the land at the' time of the sale controls, and that, in considering the value of real estate, every reasonable element going to create value should be considered, and that no one fact should be controlling in the determination of its value.
 

 In Linkswiler v. Hoffman, 109 La. 948, 34 So. 34, 36, it was held that, where lesion beyond moiety is alleged to invalidate a sale, the value of the property in the state in which it was at the time of the sale is the criterion. And the court said:
 

 “And, in this connection, it is permissible to take into consideration the circumstances by which the vendor is surrounded and give weight to the same in determin-' ing the value of the property to him at the .time he makes the sale. Copley v. Flint, 16 La. [380] 387; Parker v. Talbot, 37 La. Ann. [22] 24.”
 

 In Hyde v. Barron, 125 La. 227, 51 So. 126, it was held that, in fixing the value of property in such cases, the price must be considered as of the date of the sale.
 

 The law and jurisprudence applicable to cases of this kind is perfectly clear. The question, then, is whether the plaintiff in this case has discharged that heavy burden which the law casts upon every individual who seeks to set aside sales on the ground of lesion beyond moiety. The jurisprudence is uniform in this, not only that the plaintiff carries the burden of proving that the price paid was less than one-half the intrinsic .value of the property at the time the sale was made, but also that the evidence relied upon to show ■that fact must be clear and exceedingly strong.
 

 The trial judge was of the opinion that plaintiff had failed to discharge that burden. His ruling is amply supported by the testimony.
 

 The property here involved was acquired by Robert Gee, the husband of Charity Gee, many years ago. The testimony indicates that he was an industrious, thrifty farmer. He and Charity lived on this farm until his death, which occurred about 1927 or 1928. Charity lived on the farm until her death in 1938. After Robert’s death, the farm was not kept up, and the land as well .as the improvements thereon deteriorated rapidly, so that in March, 1935, . when . Charity sold it to the' defendant, it was in a terribly run-down and dilapidated condition. The land at that time was infested with noxious weeds and grasses. The defendant testified, and his testimony is abundantly corroborated, that the land “had grown up in sprouts, undergrowth, wire- ' grass, and brush”. The drainage ditches had become clogged; the banks of them were covered with vines, briars, and small saplings, so that the low lands on the place overflowed badly after heavy rains. A considerable portion of the land was rolling, and the top soil had washed down to the valleys. The higher portions of the land had become thin and to a large extent unproductive because the top soil had washed away. The improvements on the property, aside from the house occupied by Charity Gee, consisted of five or six one-room tenant houses and a barn. The tenant houses were badly in need of repair, and the barn was literally falling down. It was torn down and removed by defendant because it was worthless. Such was
 
 *765
 
 the condition of this farm at the time defendant acquired it. The testimony shows that at that time not over 25 or 30 acres of the land were in cultivation. A great deal more of it had been in cultivation but had grown up in “briars and sprouts and undergrowth”.
 

 Plaintiff’s witness Dorion, a real estate agent, who lived in the City of Baton Rouge, testified that he looked over the property in July, 1935, about four months after the sale in question was made, and that at that time the major portion of the land was in a good state of cultivation and that the entire property with the improvements was worth $4,200.
 

 Mr. Dorion’s testimony as to the condition of this farm in 1935 is directly and positively contradicted by the testimony of at least six citizens who lived in the vicinity and who testified that they had been acquainted with the property for many years, having seen it at frequent and regular intervals. They testified that they knew the condition of the farm when Charity Gee sold it in 1935. Each of these testified that not more than 25 or 30 acres of the land were in cultivation at that time, and that the farm, due to its run-down and dilapidated condition, had become almost unproductive. These witnesses testified that they were then, or had been, farmers. One of them testified that in 1934 Charity Gee offered the property to him for $2,000 but that he had refused to purchase because he considered that price a little high. The others testified that the defendant paid all that the property was worth. The witnesses referred ■ to are R. T. Gibbens, B. E. Gibbens, E. L. Dixon, Wallace Pecue, Elmer E. Ory, Henry Kleinpeter, and Foreman Pecue.
 

 Their testimony is corroborated in a measure by the testimony of plaintiff himself, who has been a tenant farmer on the-place all his life. He testified that in the year 1935 he, his father, and a brother all lived on the place and farmed there, and that the three of them together produced a. crop of three bales of cotton and 100 barrels of corn. He did not say that the crop-for that year was so exceedingly short because of weather conditions. He merely said that that was what they produced, and that one-half of it was turned over tO‘ Charity Gee, the owner of the property, as rent.
 

 In addition to Mr. Dorion, plaintiff called as witnesses three other real estate agents, each of whom lived in the City of Baton Rouge. Each of these testified that he had never seen the property until he inspected it at the request of counsel for plaintiff after the suit was filed in 1938. Each stated that in his opinion the property was then worth from $25 to $30 per acre, and that in his opinion it was worth as much in 1935 as it was in the latter part of 1938 when inspected.
 

 We have no doubt that the property was worth more than twice as much when plaintiff filed the suit in the latter part of 1938 as it was in March, 1935. But the condition of the property had changed in the meantime. As a result of defendant’s, energies and the expenditure of a considerable sum of money, the old farm had been created anew. It had been cleaned up. As
 
 *767
 
 a result of plowing and fertilization, the land was revived and had become productive.
 

 We concur in the view expressed by the trial judge that plaintiff’s witnesses were mistaken in their estimate of the value of the property in 1935. If the property was worth only $25 or $30 per acre in 1938, it could not have been worth that much in 1935, for the reason that, according to the testimony of defendant — and his testimony to this effect is not disputed — , he took charge of the property in the early part of 1936; cleaned it of briars, sprouts, and undergrowth; plowed it, broke the turf, cleaned out, the ditches, reestablished the drainage; used a disc in preparing the land for cultivation; planted beans, a leguminous crop, and applied fertilizer heavily in order to revive the soil; repaired the one-room tenant houses, and spent a total amount of between $2,500 and $3,000 in improving the farm.
 

 The testimony of the witnesses, who were then living or had lived in that community, one of whom was a member of the police jury and some of whom were practical farmers, that defendant, through the exercise of diligence and industry and by the expenditure of at least $2,500, had greatly improved the property and enhanced its value, is reasonable and in line with common experience. The trial judge relied upon such testimony, and, we think, correctly. Other than Mr. Dorion, the realtors called as experts by plaintiff could not have known the value of the property in 1935 because they did not see it then. They saw the farm only once, a-nd that was in 1938, after it was literally made over. Their estimate of its value in 1935 was, at best, a guess.
 

 At the time Charity Gee sold the property, she was confronted with this situation : The property was encumbered with a mortgage which she was unable to pay, and the mortgagee was threatening foreclosure. Plaintiff himself testified that the holder of the mortgage notes was endeavoring to acquire the property; that he did not care so much for his money' but wanted the property itself. There were two years’ taxes due on the property, which taxes for each year, according to the record, amounted to more than the total revenue she received for the property in 1935. By making the sale on the terms specified in the deed, she was relieved from the payment of the mortgage and the taxes. She was to have the use of the house in which she lived and of five acres of land adjacent thereto, for the rest of her life, and in addition thereto was to be paid $10 a month for approximately 10 years.
 

 She lived for about three years after she made the sale, and the testimony shows that she was never dissatisfied with her trade. Shortly after the sale was made, the plaintiff, then a tenant farmer on the place, persuaded her to file suit to set aside the sale. She first agreed, but shortly thereafter changed her mind and refused to file suit. The suit was filed by plaintiff, legatee under the will.
 

 The testimony shows beyond question that the property, at the time the sale was made, was worth very little, if any, more
 
 *769
 
 than the amount of the consideration stipulated in the deed.
 

 The judgment appealed from is affirmed at plaintiff’s cost.
 

 O’NIELL, C. J., does not take part.