Statement of the Case.
MONROE, J.
This case is before the court for the purposes of the review of a judgment of the Court of Appeal, parish of St. Mary (reversing a judgment rendered by the district court of that parish), and may be stated as follows:
Plaintiffs, William, Saphronia, and Lizzie Lewis, inherited, in indivisión from their mother, Martha Lewis, a certain lot upon the edge of the town of Franklin, upon which there was a house where the decedent had lived, and which is said to have been placed there by the defendant, who is an older and illegitimate son, to whom plaintiffs sold the interests so inherited by them; William, on July 3, 1907, for $100; Saphronia, on June 4, 1908, for $100; and Lizzie (now wife of Joseph Young), on August 18, 1908, for $150. Thereafter, on September 24, 1908, they instituted this suit alleging that when said sales were made the property was worth $2,000, and each of their said interests one-third of that amount, a fact of which defendant was well informed, and that he induced them to make the sales by threatening them with litigation and expense. Wherefore they prayed for judgment, as usual in actions of rescission, for lesion beyond moiety. Defendant answered that he had paid a fair price for the property, and, further, that his mother was left with the three children, in the early eighties, and was dependent upon her daily labor for her and their support, having no other property, save the lot in question, which was then unimproved; that he built the house and otherwise improved the lot, under an agreement with his mother that he should have the right to remove the improvements, if necessary ; and that he there supported his mother and the plaintiffs for a number of years and up to the date of her death, about four years before the institution of this suit, for which he would have asserted' a claim against her succession, but that plaintiffs recognized him as the owner of the said improvements and voluntarily proposed that he should buy their interests in the lot, which he did, without practicing any fraud or overreaching. He prayed that plaintiffs’ demand be rejected, or, in the event that judgment be rendered in their favor, that he be decreed to-be the owner of the improvements, and that they be condemned to return the $350 paid them, together with $50 expended in notary’s fees, and that they further be condemned to-pay him, as a creditor of his mother’s succession, for money expended for her support, the sum ‘of $1,000, as also the sum of $75, expended in taxes.
There was judgment in the district court in July, 1909, in favor of plaintiffs on the-question of lesion, fixing the value of the land at $1,168.50; ordering defendant to-elect, etc., whether he would pay the difference or have the sales rescinded; recognizing-him to be the owner of the house; allowing. *95 him $5.05 for taxes paid, and apparently (in the decree) ignoring his claim for $1,000. Both sides appealed, and in October, 1909, the Court of Appeal rendered judgment decreeing :
“That the judgment appealed from, rescinding the sales made by plaintiffs to defendant, be annulled, avoided, and reversed; that the part of the decree recognizing the ownership of the house in defendant be affirmed, and that plaintiffs pay the cost of the reconventional demand; that the claim of defendant for $1,000 against plaintiffs be rejected, and * * * that this case be remanded for the reception of evidence on the question of lesion or the value of the things sold at the time of the respective sales, in accordance with the views above expressed, and that the claim of the defendant for the notarial, recorder’s, and tax charges be left open and relegated to the decision of the question of lesion,” etc.
The particular. “views” referred to in the decree are stated, in part, as follows:
“Here the suit was instituted and the trial was conducted on the theory that the immovable should be estimated as a whole, either at the time of the sale or after the entire property had been acquired by defendant. * * * The 9ne undivided third interest in the land was the immovable sold by each vendor, and the estimates should have been directed to the value of such undivided interests at the time of the respective sales.”
The judgment so rendered became final. The case was again heard in the district court upon the issues which were left undecided, and there was judgment for plaintiffs on the question of lesion vel non as before, save that the judge of the district court deducted from the valuation of each of the third interests in question the sum of $20, as its estimated proportion of the cost of a partition suit, and from the aggregate valuation the sum of $25, as the estimated attorney’s fees for the 'bringing of such suit, thus reducing the valuation of each third from $389.50, as in the former judgment, to $344.50. Defendant again appealed, and plaintiffs answered, praying that the $5.05 allowed for taxes, the $60 allowed for costs of a partition suit, and the $25 allowed as attorney’s fees be disallowed. And the judgment appealed from was again reversed, and plaintiffs’ demand finally rejected; the reasons assigned by the Court of Appeal for such ruling being, in substance, as follows, to wit:
“The ease was remanded for proof to establish the value of the undivided interest of each vendor in the naked land at the time of the respective sales, taking- into account certain risks and uncertainties which entered into the problem of value. The reasons and authorities upon which the court based its conclusions are given in the original opinion, * * * and we deem it unnecessary to say here what we have said before. On the second trial plaintiffs did not offer any evidence to prove the value, at the time of the respective sales, of the undivided interests of each vendor in the tract sold. They contented themselves with proof to establish the value of the tract as a whole, in contravention of the findings of this court. The defendant, on the other hand, introduced proof to show the value, at the date of the sales, of the undivided interest of each vendor in the land. This value is fixed by the evidence at the sum of $100, * * .* or an amount slightly above that sum,” etc.
Opinion.
The judge of the district court and the counsel for plaintiffs appear to have construed the ruling of the Court of Appeal on the first hearing of the case as having meant that the value of the property, as a whole, was not to be taken into account, in determining the value of the undivided one-third interests which had been sold by plaintiffs. We understand the -Court of Appeal to have meant that the thing to be ascertained was the value of each of the undivided interests at the date at which it was sold, and that the testimony adduced as to the value of the whole property could not be accepted as conclusive on that point; but we do not understand the court to have meant that such testimony was inadmissible or irrelevant, or that it would not be considered; in connection with testimony of a mere specific character, as tending to aid the main inquiry. The court, however, found on the first appeal that plaintiffs had offered but little, if any, direct testimony as to the value of the undivided interests in question at the dates at which they were sold, or at any other time, *97 as contradistinguished from the value of the whole property, and that the testimony offered by them as to the value of .the whole property related, for the most part, to the time of the trial, which was a year or more after the last of the sales by plaintiffs had been made; and upon the second appeal it found that upon the second hearing in the district court plaintiffs had proceeded upon the theory that a correct valuation of the respective interests that had been sold could be arrived at merely by taking the valuation of the whole property, as testified to by their witnesses, and deducting therefrom the estimated amount which it might be necessary to expend, by way of costs and attorney’s fees, in effecting a partition, and that accordingly they (plaintiffs) had introduced no additional evidence, save such as related to those costs and fees. It is conceded by the judge of the district court, and by plaintiffs’ counsel, that the main inquiry was as to the value of plaintiffs’ undivided interests in the property at the respective dates at which they were sold. They, however, insist upon it that the proper method of ascertaining that value was to take the value of the whole property and divide it by the number representing those interests, and that method may, perhaps, answer in some cases; but it can hardly 'be said to answer here, where it has been held, by a judgment long since final, that it will not answer.
Matters which were determined by the final judgment on the first appeal are not open to inquiry upon the second; the remedy of the parties, if they were dissatisfied, was the writ of certiorari or review. Const, art. 101; Vincent v. Philips, 48 La. Ann. 351, 19 South. 143; A. & E. Enc. of Law, vol. 26, pp. 184, 189; Northern P. R. Co. v. Ellis, 144 U. S. 458, 12 Sup. Ct. 724, 36 L. Ed. 504; People v. Illinois Cent. R. Co., 184 U. S. 77, 22 Sup. Ct. 300, 46 L. Ed. 440.
“Specific directions contained in the mandate of the appellate court, are beyond the judicial discretion of the lower court, and hence must be implicitly followed by the latter court.” Cyc. vol. 3, p. 481.
“It is the general rule that, as to those questions embraced therein, the decision of the appellate court is binding on the lower court in its further proceedings, even though such decision be, in fact, erroneous; and where there is no change in the facts, it is the duty of the court below to adopt and follow the views expressed.” Id. p, 492.
“The functions of a district court, in relation to a mandate issued from the Supreme Court, to have a judgment executed, are merely ministerial.” State ex rel. Villavaso v. Judge, 20 La. Ann. 521; Stafford v. Renshaw, 33 La. Ann. 443.
We may say that we concur in the view that there are other elements to be considered in determining the value of an undivided interest in land besides the possible necessity and the possible cost of a partition proceeding; so much so, that we apprehend that an offer to sell such an interest presents hut little temptation to the average investor. Thus, among other things, in order to hold the property, such investor must, necessarily, be brought in contact with others, who may or may not agree with him as to his administration; whilst, upon the other hand, the whole property, including his interest, may, at any time, and when he is least able to protect himself, be sold at their instance and to their advantage. It therefore seems to us probable that, where 10 persons would be willing to buy the whole of a particular piece of real estate at a given price, hardly one could be found who would be willing to invest the same amount of money in an undivided interest in such property, to he held by him in common with strangers with whom he may not care to find himself associated even in that way; and hence that the market for such an interest would be comparatively circumscribed. It is true that a particular individual, now and then, may make a profit in buying a small interest in a piece of real estate and selling it for a better price to the holders of the larger interest, or in buying the larger interest and *99 forcing the sale of the whole to his advantage, and to the disadvantage of the holder of the smaller interest; but such individual does not represent the average invester who makes the market, and the fact 'that such things may be done is additional evidence that the sale of an undivided interest in property of that character is likely to be affected by influences other than those which would affect the sale of the whole. Whilst, therefore, it would be impossible to fix the value of an undivided interest in anything without at the same time fixing the value of the whole, the value of the whole may be fixed without at the same time fixing the value of the undivided interest. And it was because the Court of Appeal thought that the value of the undivided interests, the sales of which are here attacked, had not been fixed by testimony as to the value of the whole property that the case was remanded. Upon the other hand, it is, no doubt, also true that there are, or may he, cases where the fixing of the value of the whole property would furnish a sufficient basis for the fixing of the value of a fractional interest therein, and where that is found to be so the basis so furnished would be accepted.
In the instant case, in its opinion refusing the rehearing on the last appeal, the Court of Appeal, whilst adhering to the view that the burden was on plaintiffs to prove the value of the undivided interests sold by them at' the dates of the respective sales, and holding that that burden had not been discharged by the evidence adduced as to the value of the whole property, nevertheless saw proper to consider the whole testimony from plaintiffs point of view, and expressed its conclusion, in part, as follows:
“Thus reviewing the case from plaintiffs’ counsel’s standpoint, we are constrained to hold that plaintiffs have failed, on their own theory of the case, to establish lesion by that strong and positive evidence required by law to prove lesion.”
Imitating this example, we also have considered the whole testimony in the case, and, whilst we shall not lengthen this opinion by a detailed analysis of it, the results are, in. substance, as follows, to wit:
The property in question is just outside-the corporate limits of the town of Franklin, not far from the railroad depot, in a neighborhood occupied by Italians, negroes, and’ disreputable people, and has a frontage of 97 feet on Willow street, by a depth of, say, 1,000 feet, to what is called the “town ditch,”at which point it is very low and badly drained, and is subject to overflow. Diagonally opposite a family of the name of Kramer own a piece of property, which has-a frontage on Willow street of 100 feet, by a depth of, say, 720 feet; but aside from the-difference in the dimensions of the two lots there is this further difference, to wit, that, whereas the property here in dispute has no-outlet on either side or, it may be said, in the rear, the Kramer property has a frontage, for its whole depth, on a street running at right angles from Willow street. In other words, it is on a street corner, and an Italian of the name of Bosco, who is engaged in some kind of mercantile business in that neighborhood, about the time of the institution of this suit, or shortly before, made an-offer of $1,400 for it, and the offer was refused, which circumstance is the basis, and: the sole basis, upon which several of plaintiffs’ witnesses have testified that the lot in dispute is worth, say, $1,500, or thereabouts. But Bosco gave the following testimony in regard to his offer, to wit:
“Q. Didn’t I stand there and talk to yon and your wife, and your wife said she wanted to buy that property? A. Yes, sir. Q. And didn’t she tell me that the reason she wanted to buy the property was, not because it was worth $1,400, but because she wanted to get that corner to keep somebody else from putting up a store there in competition with you? A. Yes, sir. Q. I say, is it not a fact that your wife, in your presence, and you talking also, told me that the reason that you wanted to buy the Kramer land, and the reason you wanted to *101 pay $1,400 for it, was to keep some other person from buying it and putting up a store there? A. Yes, sir. Q. And didn’t she tell me, in your presence, that you didn’t consider the property worth $1,400? A. She wanted to keep anybody from blocking up the property; that’s why she wanted to pay a little more money. Q. In other words, you wanted to keep anybody from getting that corner and coming there and opening business, and keeping you from making a living? A. Yes, sir; couldn’t make, a living. Q. And didn’t she tell me that was the reason she offered such a big price for the land? A. Yes, sir.”
It is true that Bosco also testified that he has purchased several other pieces of real estate in that neighborhood, from which it may be inferred that he has prospered in the business which he conducts; but, those facts do not qualify him as a real estate expert, since one may make money in retailing groceries and lose it in land, and, so far as we are informed, Bosco has, as yet, sold no land, and whether he will make a profit upon his investments in that line remains to be seen. If the testimony of defendant's witnesses is well founded, the chances are that he may make a loss, and that the Kramers are holding their lot at too high a figure; the president of a bank in Franklin testifying that a mortgage of $600 was about as much as he thought the Kramer lot could stand, and that he had obtained a second mortgage on some other property as additional security for that amount.
Another feature of the case is that plaintiffs seek to establish a high value for the lot in question by showing that an alley, say, 17 feet wide, could be opened upon it from front to rear, and that it could then be divided into lots, fronting on the alley and 80 feet in depth, which could be sold for good prices. There are, however, several witnesses who have testified that they have lots for sale in that part of the town, and that there is little or no demand for them. Beyond that the idea appears to be a new one, which, .so. far as we are informed, was not entertained or thought worth considering when the sales here in question were made, and it may have been suggested by the fact that at this time that immediate neighborhood is becoming pretty thickly settled by people of the classes to which we have referred.
Our conclusion is that what may be the value of the property, whether considered as a whole or with respect to the undivided interests, taken separately, is a mere matter of opinion, in the forming of which the witnesses had but little to guide them. Some of defendant’s witnesses were, however, men of affairs, who lend money on real estate in Franklin, and from what they say we are pretty well satisfied that defendant would be doing unusually well if he could succeed in borrowing as much as $500 on his lot. Beyond that most of the testimony to which we have been referring relates to the value of the whole property at the date of the trial in the district court. The only direct testimony as to the value of the undivided third interests which were sold, as of the dates of the sales, was given by defendant’s witnesses, McKerall, Levy, Peterman, Mayer, Bell, and Verdun, and they testified that those interests, at those dates, were worth from $100 to, say, $130, each.
Under the law and the settled jurisprudence of the state, the burden was on the plaintiffs to make out their case by testimony sufficiently strong and well founded to carry conviction to the mind; in fact, it has been held that it should be “peculiarly strong and conclusive.” Bemaret v. Hawkins, 8 La. Ann. 483; Mayard v. La Porte, 109 La. 102, 33 South. 98; Parker v. Talbot, 37 La. Ann. 25; Martin v. Delaney, 47 La. Ann. 719, 17 South. 264; Girault v. Feucht, 120 La. 1070, 46 South. 26; Succession of Witting, 121 La. 501, 46 South. 606; Hickman v. Washington, 122 La. 945, 48 South. 333.
We do not find that plaintiffs have discharged the burden thus resting on them. It *103 is therefore ordered, adjudged, and decreed that the judgment complained of remain undisturbed, and that this proceeding be dismissed at plaintiffs’ cost.