HIGGINS, Justice.
 

 This is an action by the plaintiff to annul or rescind a purported sale by her to the defendant of a farm containing 199 acrés, in the parish of Caddo, on the ground that defendant fraudulently induced her to sign an act of sale instead of a second mortgage, as was agreed upon, and, in the alternative, for lesion beyond moiety.
 

 The defendant denied the allegations of the petition and averred that the sale was bona fide, and the consideration therefore represented the value of the property at the time it was sold, on May 27, 1932.
 

 There was judgment in favor of the defendant, dismissing the suit, and the plaintiff has appealed.
 

 The record shows that plaintiff inherited the property in question from her parents when she was about 8 years of age; that she lived with the defendant and his wife, who was plaintiff’s first cousin, practically up to the time of her marriage in 1922; that there Were several children born of her marriage, and plaintiff, her husband, and children lived on the farm for about 8 years prior to the time of the alleged sale; that on May 5, 1928, plaintiff negotiated a loan with the Prudential Insurance Company of America, for the sum of $2,000, maturing April 1, 1938, bearing 6 per cent, interest, payable annually on the 1st of April; that in April, 1932, the insurance company was pressing the plaintiff for the annual interest payment of $108, and threatened foreclosure proceedings; that the taxes were likewise due and unpaid, amounting to $48; and that, due to adversity and sickness, plaintiff and her husband were unable to meet the payments and appealed to the defendant to make them a loan of $160.46, with which to pay the interest and taxes.
 

 Plaintiff and her husband testified that the defendant agreed to make the loan and to take, as security therefor, a second mortgage on the property and a lien on the crop located on the farm, for which plaintiff and her husband gave a note of $175.
 

 Defendant testified that he refused to make the loan, but agreed to purchase the property by assuming the balance of the
 
 *717
 
 mortgage amounting to the sum of $1,-960.46, and a cash payment of $160.46, or a total of $2,120.92; that on May 13, 1932, he took plaintiff and her husband, in his car, to the office of the clerk of the district court, and there had the deputy clerk of court pass an act of sale and assumption from plaintiff’s husband to himself, for the price agreed upon; that the act was duly recorded; that shortly thereafter he was advised that, as the property had been inherited by the plaintiff,' the sale was defective and that the wife and not the husband was the owner of the property; that defendant and his wife went to the plaintiff’s home and defendant’s wife remained with plaintiff’s children, while she and her husband went with defendant to a notary, whose office was in a bank building in Shreveport, where an act of sale was passed on May 27, ■1932, by plaintiff to defendant, upon the same terms as the previous one, and it was also duly recorded.
 

 The plaintiff and her husband remained on the property, according to their version, under the belief that they had only signed a mortgage; having failed to read the papers on account of their implicit confidence in the defendant and lack of knowledge of legal matters. The defendant’s statement is to the effect that the plaintiffs remained on the property as tenants, as shown by the $175 rent note for the year 1932, as well as a letter which the plaintiff’s husband had written to the defendant on January 3, 1933, in which he stated that he was willing to buy part of the property back, or rent on a basis of sharing the crop.
 

 On March 27, 1933, defendant sold the property to Justin A. Taylor for the sum of $3,000, $300 cash and $2,700, on terms, secured by a vendor’s lien and mortgage.
 

 Plaintiff and her husband refused to move from the property and appear to have remained in possession of the farm up until the time the present suit was instituted on December 30, 1933, although the defendant collected rent, which was represented by cotton produced on the farm, from other parties who were tenants thereon, prior to the time this controversy arose.
 

 It is admitted that the $160.46 was not paid to the plaintiff, but was used by defendant to pay the taxes and accrued interest on the mortgage.
 

 After the case was submitted, but before a decision was rendered, Taylor, who was made a defendant, reconveyed the property to Dr. Baker, who had the case reopened, and filed a motion alleging that he had reacquired the property, and, if the court found from the evidence that there was lesion beyond moiety, defendant elected to rescind the sale from plaintiff to himself, upon plaintiff returning the consideration paid her, the taxes paid for the years 1932 and 1933, and the interest paid upon the mortgage to the Prudential Insurance Company of America. Taylor was dismissed from the case as a defendant not having any further interest.
 

 Our views are in accord with those of the trial judge; that the evidence is insufficient to establish the alleged fraud, because, on the one hand you have the
 
 *719
 
 testimony of the plaintiff and her husband, and, on the other, the testimony of the defendant and his wife, corroborated by the two acts of sale and the letter written by the plaintiff’s husband to the defendant, offering to purchase a part of the property or to rent it, and the testimony of other witnesses, that plaintiff did not complain of the fact that a sale, instead of a mortgage, was passed, until several months later.
 

 Article 1860 and the relevant part of 1861 of the Revised Civil Code, on the subject of “lesion,” read, respectively, as follows:
 

 “1860. Lesion is the injury suffered by one who does not receive a full equivalent for what he gives in a commutative contract. The remedy given for this injury, is founded on its being the effect of implied error or imposition; for, in every commutative contract, equivalents are supposed to be given and received.
 

 “1861. The law, however, will not release a person of full age, and who is under no incapacity, against the effect of his voluntary contracts, on account of such implied error or imposition, except in the two following cases:
 

 * * *
 

 “2.
 
 In sales of immovable property, the vendor may be relieved, if the price given is less than one-half of the value of the thing sold; but the sale can not be invalidated for lesion to the injury of the purchaser.”
 

 See, also, articles 2589 and 2590, R.C.C.
 

 The issue, therefore, is whether or not plaintiff, as vendor, received less than one-half of the value of the immovable property sold to the defendant. Hyde v. Barron, 125 La. 227, 51 So. 126.
 

 In the case of Hickman v. Washington, 122 La. 945, at page 951, 48 So. 333, 335, the court said:
 

 “The last expression of opinion by this court on that subject will be found in Succession of Witting, 121 La. 501, 46 So. 606 [15 Ann. Cas. 379], and Girault v. Feucht, 120 La. 1070, 46 So. 26. In the first of these two mentioned cases this court declared that:
 

 “ ‘The burden is on the vendor to prove lesion beyond moiety by evidence peculiarly strong and convincing, and of such a nature as to exclude speculation and conjecture. The highest estimation, under the rule cannot be adopted as the true' measure of value. The court referred, in making this declaration, to a prior announcement to the same effect in Girault v. Feucht.’ ”
 

 See, also, Demaret v. Hawkins, 8 La. Ann. 483; Keogh v. Meyers, 43 La.Ann. 952, 9 So. 913; Mayard v. Laporte, 109 La. 101, 33 So. 98; Lewis v. Baker, 128 La. 92, 54 So. 482; Fleming v. Irion, 132 La. 163, 61 So. 151.
 

 Plaintiff offered' the testimony of six witnesses, who were familiar with the property in question, some of whom lived in the vicinity thereof, and they testified that the property was worth $25 an acre, or $4,975 for all of the property, in the condition in which it was at the time it
 
 *721
 
 was sold in March, 1932. (The testimony of the plaintiff and her husband is also to the same effect.) These witnesses concede that there were not very many sales in that section, because people occupied their farms as homes, but some of them did refer to certain sales; for instance, Mr., P. P. Keith, Jr., a lifelong resident of that section of Caddo parish and an extensive planter and successful merchant, pointed out that 180 acres of similar land, located near the farm in question, were sold for $25 per acre during that year. The witness, J. S. Berry, stated that he had secured a loan of $2,700 from the Federal Land Bank and a loan of $2,100 from the Federal Land Commissioners on 220 acres of similar land in that section, in February, 1934, and the evidence is uncontradicted that the Federal Land Bank only loans 50 per cent, of the value on farm lands. Mr. Joe Connelly, a land inspector and appraiser for the Prudential Life Insurance Company of America, stated that in 1932 he had appraised the farm in question at between $20 and $30 per acre, without taking into consideration the improvements thereon.
 

 Defendant offered the testimony of five witnesses, some of whom were residents of that section, and a real estate agent, who testified that the property was worth between $7.50 and $12.50 per acre, at the time of the sale in question. The testimony of the defendant and Mr. Taylor is to the same effect.
 

 The evidence is undisputed that, less than a year after the defendant purchased the property, he sold it to Mr. Taylor for $3,000, which is more than $500 in excess of the maximum amount per acre-that the defendants’ witnesses estimated that the property was worth. It appears-that from the time the defendant bought the property, until the time he sold it, no-additional improvements were made thereon, and that the plaintiff continued in-possession and occupancy. The evidence-is also clear that the Federal Land Bank will not loan more than 50 per cent, of the value of farm land. This institution,, with its strict regulations and competent appraisers, loaned to Mr. J. S. Berry $2,-700, on his 220-acre farm, thus showing that that farm had a value of $5,400, or $24.50 per acre, in February, 1934. (Conditions at that time were about the same as they were in May, 1932.) It appears that this land is like the acreage in question, although not quite as well located as plaintiff’s farm. Mr. Berry, in addition to the $2,700 loan, obtained a loan of $2,100 from the Federal Land Commissioners, making the total loan $4,800, or $22 per acre.
 

 In his reasons for judgment, the trial judge apparently did not take this into consideration, and, while stating that the witnesses of the plaintiff gave a conscientious estimate of the value of the land, he felt that they were not disinterested witnesses, because some of them were landowners in the vicinity of the property in question, and had an interest in keeping the value up. The record shows that some of the witnesses did not have any property in the vicinity, and that others had such a small interest that they
 
 *723
 
 could, not be considered as interested parties. In fact, the interest of the landowners to testify in such a way as to keep the value of the property up is so remote that we do not believe it should in any way prejudice their testimony. This is especially true where the testimony of those witnesses was corroborated by a sale of 180 acres at $25 per acre, and the loan by the federal government on the basis of $4,800, on a valuation of $5,400, or $24.50 per acre.
 

 We, therefore, find ourselves unable to agree with our learned brother below “that the testimony on this subject is fairly well balanced,” and conclude that the plaintiff has established by satisfactory and convincing evidence that she received less than one-half the value of the real estate at the time she sold it to the defendant. At that time, the property was worth $25 per acre, or a total of $4,975, one-half of which is $2,487.50. The total consideration for the sale was $2,120.92. Therefore, plaintiff has proved that she received less than one-half of the value of the property. Ware v. Couvillion, 112 La. 43, 36 So. 220.
 

 For the reasons assigned, the judgment appealed from is annulled, and it is now ordered, adjudged, and decreed that there be judgment herein in favor of Mrs. Ida Hunnall Hall, plaintiff, and against the defendant, Dr. Fred A. Baker, rescinding and annulling the act of sale by plaintiff to the defendant, of the immovable property described in paragraph one of the petition, by act before J. P. Sealy, notary public, dated May 27, 1932, and recorded C.O.B. 34, p. 708, Instrument 1673, in the office of the clerk of court and registrar of conveyances of the parish of Caddo, La., subject to an adjustment of the rights of the parties, in accordance with the articles of the Revised Civil Code on the subject of “Lesion beyond Moiety,” since the defendant has elected to return the property, in the event the court should conclude that there was lesion beyond moiety, and the case is remanded to the district court to have these respective rights of the parties determined and adjusted, in accordance with law; all costs of court to be borne by the defendant.