166 So. 471

## CITY OF SHREVEPORT v. KANSAS CITY, S. & G. RY. CO. et al.

No. 33642.

Jan. 6, 1936.

Rehearing Denied March 2, 1936.

See, also, 181 La. 458, 159 So. 715.

Wilkinson, Lewis & Wilkinson and Wise, Randolph, Rendall & Freyer, all of Shreveport, for appellants.

Aubrey M. Pyburn and Jos. H. Jackson, both of Shreveport, for appellee.

HIGGINS, Justice.

This is one of four expropriation suits instituted by the city of Shreveport against four different railroad companies for the purpose of extending Allen avenue, from its intersection with Texas avenue, across nineteen railroad tracks and the property of the railroads, to Hoadley street, all within the corporate limits of the city, in order to open a cross-town street as a thoroughfare for the relief of congested traffic on Texas avenue, Southern avenue, and other streets in that locality.

The defendants denied the right of the city to take the property on the grounds that there was no public necessity for doing so; that it would deprive them of the use of their railroad yards; that it would be extremely dangerous to those who used the railroad and those traveling on the proposed street, particularly as to the north Y track, where there was to be a grade crossing; that it would unduly interfere with the trains of defendants engaged in interstate commerce; that defendants had recently spent a large amount of money for improvements in the vicinity of the proposed street, and that the opening thereof would destroy the use and purposes for which the said property had been acquired and the improvements made, thereby burdening and interfering with interstate commerce in violation of the Constitution of the United States (article 1, § 8, cl. 3); that an unprecedented, economic depression had depleted the financial resources of defendants to such an extent that, if they were forced to contribute to the opening of the street, as required by the provisions of Act No. 51 of 1928, they would be unable to perform their duties as interstate carriers; that a majority of the citizens of Shreveport favored a safer and more economic location for the proposed street; and that the refusal of the mayor and council of the city, to consider some other route, in order to avoid the danger to the public and the excessive costs for opening the street, is arbitrary and, unreasonable and constitutes an abuse of power, which will unduly burden interstate commerce, in violation of the Transportation Act (41 Stat. 456), the Interstate Commerce Act (49 U.S.C.A. § 1 et seq.), and the Constitution of the United States. And, in the alternative, in the event that their property was expropriated, defendants claimed damages in the total sum of $745,000.

The trial judge ruled that the right of the city to expropriate a servitude or right of way for the street over the defendants' tracks and property had been finally settled in the city's favor, by granting it the right to open the street by means of an overpass or underpass, except as to the north Y track, which was to be crossed at grade.

He, therefore, sustained the plea that the decisions of this court have become the law of this case and a plea of res adjudicata, and struck out these defenses, citing City of Shreveport v. Kansas City, Shreveport & Gulf Railway Company et al., 169 La. 1085, 126 So. 667; City of Shreveport v. Texas & Pacific Railway Co. et al., 178 La. 1087, 152 So. 913; City of Shreveport v. Kansas City, Shreveport & Gulf Railway Company et al., 181 La. 458, 159 So. 715; City of Shreveport v. Texas & Pacific Railway Co. et al., 182 La. 36, 161 So. 12.

A jury of freeholders was impaneled for the purpose of determining the extent of the defendants' damages, but the judge refused to allow the defendants to introduce any proof as to alleged damages, except the value of the land actually taken and the damages which the defendants might suffer in constructing future tracks over the underpass. The jury rendered a verdict in favor of the defendants for the sum of $4,036.94, for which amount judgment was entered in their favor, jointly.

Defendants applied for a new trial on all grounds previously urged as defenses, and on the further ground that the trial judge erred in excluding evidence as to defendants' damages, and that the amount of the verdict is inadequate and insufficient.

At the same time, the defendants filed exceptions of no right or cause of action on the following grounds:

(1) That under the provisions of article 2630, Revised Civil Code, it is a condition precedent to the plaintiff's right to bring the expropriation suit, to allege and prove that the parties could not agree on the purchase of the property in question; and (2) that the plaintiff failed to offer any proof whatsoever of any competent legislative authority for the opening of Hoadley street, in the manner proposed, or for the taking of the defendants' property in this suit.

The application for a new trial and the exceptions were overruled.

The defendants appealed. Plaintiff has answered the appeal, claiming that the verdict of the jury was excessive and should be reduced to the sum of $877.21.

We shall first consider the exceptions:

■ Article 2630, Rev.Civ.Code, reads, in part, as follows:

"Whenever any corporation, constituted under the laws of this State, * * * can not agree with the owner of any land which may be wanted for its purchase, it shall be lawful for such corporation to apply by petition to the judge of the district court in which such land may be situated."

The petition alleges that the parties were unable to agree. The defendants denied that allegation. The record shows that these two defendants, as well as the three other ones in the previous and above-referred to cases, all denied the right of the city to expropriate the property. In fact, that is one of the major defenses in the instant proceeding. The record also shows that the defendants are claiming the sum of $745,000, in compensation and damages for the servitude or right of way taken by

the city. The resolutions passed by the council, authorizing the mayor and city official to take proper steps to obtain the right of way over the tracks and property of the defendants, invested them with sufficient authority to do so amicably, but it is obvious from the defenses and the claims for damages by the defendants that this was impossible.

In Corpus Juris, vol. 20, p. 896, verbo "Eminent Domain," it is stated that: "If it is apparent that an effort to agree would be unsuccessful and an offer useless, none need be made." See, also, footnote No. 27.

Where the owner wholly denied the right of the plaintiff to expropriate the property, an attempt to agree to purchase the property is unnecessary and need not be made. State v. Superior Court of Chehalis County, 48 Wash. 277, 93 P. 423, 17 L.R.A.(N.S.) 1005, 125 Am.St.Rep. 927; Patterson v. Mead, 148 Mich. 659, 112 N. W. 742.

Our law does not require one to do a vain and useless thing. A peremptorial refusal to recognize the city's right to expropriate the property dispenses with the necessity of endeavoring to amicably purchase the property before such proceedings are instituted.

With reference to the second ground of the exception, the record shows that the city council, on July 26, 1927, adopted a resolution which fully empowered and authorized the mayor to purchase and, if necessary, to institute all expropriation proceedings in court, for the purpose of securing the right of way in question.

On May 29, 1928, the city council adopted a second resolution, which certifies that the members thereof have read the petitions for the expropriation of the property and ratified and approved them, and fully authorized the city attorney to proceed to a final decision with the cases.

On June 26, 1934, the council, in another resolution, took cognizance of the supplemental and amended petition, making the Kansas City Southern Railway Company a party defendant, to which there was annexed a supplemental plan by the city engineer for the opening of the street, dated June 5, 1930, and ratified and approved the petition and plan, and authorized the counsel for the city to proceed with the trial of the case to a final decision.

The record clearly shows that the officials of the railroads are quite familiar with the location of the proposed street, because the plats or plans and other evidence introduced by the city leave no doubt as to the place and manner of opening the street. In fact, it is through this means that they seek to show the extreme hazard to traffic in crossing the north Y track at grade.

In the original briefs of the defendant, at page 21, filed in the case of City of Shreveport v. Kansas City, Shreveport & Gulf Railway Company et al., 181 La. 458, 159 So. 715, supra, the defendants presented the same arguments and cited the same authorities in support thereof, but their contentions were rejected by this court. Furthermore, we may say that the cases cited by the defendants to sustain their

position are not in point, because they do not involve expropriation or condemnation proceedings.

A reading of the above-cited decisions of this court, covering this series of cases, shows that the city's right to expropriate a right of way over the tracks and property of the defendants for the purpose of opening the street by means of overpass or underpass and with a grade crossing over the Y track, was recognized and upheld.

■ An examination of the exceptions and the answers of the other railroad companies involved, and particularly the Kansas City, Shreveport & Gulf Railway Company, one of the defendants herein, reveals the fact that the same points, arguments, and contentions here made, were made in those proceedings and were rejected by this court. The trial judge, therefore, correctly maintained the plea that the previous decisions of this court became the law of the case between the parties, and struck out the allegations of the answers covering these subject-matters or defenses.

But it is said that the Kansas City Southern Railway Company was not made a party defendant when this suit was originally filed in 1928, and decided by this court in February, 1930, and January, 1934, but was made a party only after it had recorded, in 1934, its lease with the Kansas City, Shreveport & Gulf Railway Company, under which it had the right to use their tracks and property. Therefore, it is contended that this defendant is not bound by the previous decisions of this court.

■ The city certainly had a right to rely upon the public records in filing its suits, even if the lessee was a necessary party. Rev.Civ.Code, art. 2266; City of Shreveport v. Kansas City, Shreveport & Gulf Railway Co., 181 La. 458, 159 So. 715. This defendant had both notice and knowledge of these proceedings from the very beginning, as the record conclusively shows. In fact, the records of the several suits before this court show that the attorneys and officials of the Kansas City Southern Railway Company handled and conducted the defenses of these expropriation suits not only on behalf of its lessor, the Kansas City, Shreveport & Gulf Railway Company, but also vigorously defended the case in its own behalf, although its name did not formally appear as a defendant. It was the officials and employees of the Kansas City Southern Railway Company and not the Kansas City, Shreveport & Gulf Railway Company, who mainly testified in the proceedings. It was the able counsel representing the Kansas City Southern Railway Company in this district, who conducted the trial of these cases. In fact, the learned trial judge states that the Kansas City Southern Railway Company's representatives are the intelligence behind the whole fight. It is also significant that the defendants in the instant case have filed a joint answer in which they pray that the court award to them compensation and damages, jointly.

■ It is a well-settled principle of law that a party, who is not made a defendant of record, may subject himself to be con-

cluded by the result of the litigation, if he openly and actively, and, in respect of some interest of his own, assumes and maintains the defenses of the action. R.C.L. vol. 15, verbo "Judgments," p. 1009, § 483; Johnson v. Weld, 8 La.Ann. 126; Lavigne (Hicks, Substituted) v. Louisiana Railway & Navigation Co., 12 La.App. 275, 124 So. 609; Souffront v. La Compagnie des Sucreries, 217 U.S. 475, 30 S.Ct. 608, 54 L.Ed. 846; Hauke v. Cooper (C.C.A.) 108 F. 922; Cushman v. Warren Scharf Asphalt Paving Company (C.C.A.) 220 F. 857, 860.

■ We may add that our decision in the case of City of Shreveport v. Kansas City Shreveport & Gulf Railway Company, 181 La. 458, 159 So. 715, also binds the Kansas City Southern Railway Company. We certainly feel that the Kansas City Southern Railway Company, after participating in this expropriation proceeding, which has lasted for about eight years, has had its day in court on the question of the City's right to expropriate the property. This is particularly true when we bear in mind that this is supposed to be a summary proceeding.

The decisions of this court on the former appeals have become the law of this case. Hoey v. New Orleans Great Northern R. Co., 164 La. 112, 113 So. 785; Banahan v. Hughes, 158 La. 648, 104 So. 486; Lewis v. Baker, 128 La. 92, 54 So. 482.

The trial judge also struck out of the defendants' answer claims for various elements of damage, which they aver will be sustained by them in the event the proposed street is opened, as follows:

The damages resulting from the alleged destruction of the plan of the proposed joint freight interchange yard, and the savings which defendants claim will be effected thereby; the damages resulting from the alleged abandonment and discontinuance of the north Y track, together with the costs of purchasing and constructing a new route into the city; the damages to the adjoining parcels of land, which, it is said, will be rendered valueless for any purpose; and the damages representing structural costs, which will have to be borne by the railroad, in connection with the projection of future tracks over the proposed street.

The reasons assigned by our learned brother below for his ruling are that this court affirmed the judgment of the trial court, holding that the railroad company would not be deprived of the beneficial use of its properties, if the proposed street were installed by means of underpass or overpass, except as to the north Y track. He pointed out that the Kansas City, Shreveport & Gulf Railway Company was formally made a party to that proceeding, and the Kansas City Southern Railway Company took an active part in the defense of that action, although not appearing in name as a defendant. City of Shreveport v. Kansas City, Shreveport & Gulf Railway Co. et al., 169 La. 1085, 126 So. 667.

He further assigned as a reason for striking out these averments of defendants' answer, that this court affirmed the verdict of the jury rejecting the defendants' claims for damages to the residue of their property (except as to the costs of constructing

future tracks over the underpass) in the case of Shreveport v. Texas & Pacific R. Co. et al., 182 La. 36, 161 So. 12, wherein both defendants here, although not appearing by name as defendants there, actually took part in the defense of the case with reference to these identical issues.

The record in the Texas & Pacific Railway Company Case shows that a voluminous amount of evidence was introduced by the railway companies on these same controversial subjects, tending to show that the contemplated interchange yard, which would effect great economy, would have to be eliminated; that certain other lands would become worthless; and that it would cost great sums of money to span the underpass with future tracks. A substantial part of the testimony was given by Mr. W. N. Deramus, vice president and general manager of the Kansas City Southern Railway Company. The plat, outlining the proposed interchange yard and introduced in evidence in that case, was prepared in the office of the Kansas City Southern Railway Company, in Kansas City. The defendants' district counsel, who are also officials of these companies, appeared in that case.

It was the opinion of the trial judge that these issues had been fully and completely covered in the previous cases, in which these defendants had actively participated, and there being nothing in the averments of the defendants' answer to show that the matters could be presented in a different or more favorable light, as far as these defendants were concerned, that it would be merely rehashing the whole subject to no useful purpose; because of the final decision of this court affirming the verdict of the jury, rejecting such claims as damages to the residue of the companies' property. He, therefore, not only struck out these averments of the answer, but also refused to permit defendants' witnesses, who were tendered, to testify thereto.

We are of the opinion that the ruling is correct concerning the claim for damages on account of interchange yard and savings to be effected thereby, and the claim for damages, because certain parcels of land will be rendered useless; since those issues were finally determined adversely to defendants' contention here, in a proceeding in which they took an active part. Our decision therefore became the law of the case. (See authorities cited, supra.) But our learned brother below erred in making this same ruling with reference to the claim for damages in connection with the north Y track, and the claim for damages for costs of construction necessary to span the underpass, when additional or future tracks are laid.

While the question of the abandonment and discontinuance of the north Y track, on account of the danger to railroad and vehicular traffic over that track, was presented on the issue as to the right of the city to expropriate the property, this court finally holding that the railroad companies would not be deprived of the beneficial use of their track and property by opening the street (City of Shreveport v. Kansas City, Shreveport & Gulf Railway Co., supra), that matter was not involved in the case of the City of Shreveport v. Texas & Pacific Railway Co. et al., supra, where the

issues were as to the value of their property taken and the damages sustained by those companies.

■ The district judge and this court decided that by granting a right of way for a street to be opened by means of underpasses over all of the tracks, except the north Y track, which was to be crossed at grade, the railroad companies would not be deprived of the beneficial use of their tracks and property. Hence, it follows that when the question of damages is considered by the court, that it could not now say, as contended by the defendants, that the railroad companies would be deprived of the beneficial use of their tracks and property. But, while it is true that the railroad companies will not be deprived of the beneficial use of their tracks and property to the extent of depriving the city of the right to expropriate the right of way for the street, there might be some damage resulting from interference with the exclusive enjoyment and the use of the property and tracks, by virtue of the presence and use by the public of the proposed street. Under their pleadings, defendants were entitled to offer evidence tending to show such damage, even though it might be nominal. Article 1, § 2, Constitution of the State of Louisiana; article 2632, Revised Civil Code; Louisiana Highway Commission v. Laseigne, 177 La. 440, 148 So. 672; Louisiana Highway Commission v. Guidry, 176 La. 389, 146 So. 1; Louisiana Highway Commission v. De Bouchel, 174 La. 968, 142 So. 142; Manning v. City of Shreveport, 119 La. 1044, 44 So. 882, 13 L.R.A.(N.S.) 452; Kansas City, S. &

G. R. Co. v. Louisiana W. R. Co., 116 La. 178, 40 So. 627; Shreveport & A. Ry. Co. v. Hollingsworth, 42 La.Ann. 749, 7 So. 693; Vicksburg S. & P. R. Co. v. Dillard, 35 La.Ann. 1045.

In the case of City of Shreveport v. Texas & Pacific Railway Co., supra, we expressly held that the costs of building additional elevated tracks over the underpass in the future was an element of damage, and allowed it. While the judge struck out the averments of the answer as to this item of alleged damage, during the trial some evidence was introduced on this score, but the verdict of the jury is silent on the question of damages. It appears to us that the ruling of the court interfered with defendants offering their evidence as to this claim for damages and further created a situation which was confusing to the jury. We shall, therefore, remand the case, in order to have the claim for damages with reference to the north Y track, and the costs of construction for future elevated tracks determined.

We consider that the previous decisions of this court holding that the railway companies will not be deprived of the beneficial use of their properties is the law of the case on the issue that the defendants will have to completely abandon and discontinue the use of the north Y track, on account of traffic hazards, and will be compelled to purchase a new route and lay a new track to the Union Depot. In remanding the case for proof as to the claim for damages as to the north Y track, we are limiting the evidence to such damages as might be shown to result from interfer-

ence with the exclusive enjoyment and use of the track by defendants on account of the public jointly using the ·street crossing with the railroads, thereby causing a more hazardous situation, and damages on account of necessary expenses of guarding against such danger.

■ With reference to the award for the sum of $4,736.94, as compensation for the number of square feet of the defendants' property which was taken, it appears that the jury allowed the defendants 25 cents per square foot. The three real estate experts who testified for the plaintiff, appraised the property taken for the proposed sixty foot street, which, within a distance of 330 feet would traverse all 19 railroad tracks, at 5 cents per square foot for the servitude or right of way, and 10 cents per square foot for the property in fee. The three real estate experts and the railroad expert who testified in behalf of the defendants appraised the property taken for the street at 40 cents per square foot for the servitude or right of way, stating that they would make no distinction between valuing the property for the right of way or in fee, because the companies would be deprived of the use of their property and inconvenienced by the opening of the street and the using thereof by the public. The city is not attempting to expropriate the property in fee, but is seeking a servitude or right of way over it. There is considerable distinction between the two propositions. The ownership or right to the property in fee is certainly more valuable than the servitude or right of way over it.

The same evidence as to the value of the property taken from the three other railroad companies in the former proceeding was introduced in this case. The jury in the other cases allowed the defendants 10 cents per square foot for the property taken, and we found that the award was reasonable and fair. In the instant case, the jury places a value of 25 cents per square foot on the property taken, and we are of the opinion that this amount is excessive. We shall, therefore, reduce the amount of the award to conform with our previous judgment and allow the defendants, jointly, 10 cents per square foot for 18,948 square feet, or $1,894.80.

For the reasons assigned, the judgment appealed from is affirmed in all respects, except as follows:

It is ordered, adjudged, and decreed that the amount awarded to the defendants as compensation for the property taken by the city of Shreveport is hereby reduced from the sum of $4,736.94 to the sum of $1,894.80.

It is further ordered, adjudged, and decreed that the claims for damages with reference to the alleged interference with the exclusive enjoyment and use of the north Y track on account of the proposed street crossing that track at grade, and the damages covering the alleged costs for building an embankment, in order to span the underpasses when future tracks are laid, are remanded to the district court for the purpose of having these issues determined in a proper proceeding, consistent

with the views herein expressed, and according to law.

As thus amended, the judgment is affirmed.